Sylvia Franceschi, Appellee, v. J. B. Franceschi, Mike Gulotta and Lena Gulotta, Appellants.

Gen. No. 10,017.

496

Heard in this court at the December term, 1944. Opinion filed July 11, 1945. Released for publication July 27, 1945.

MILLER, THOMAS & HICKEY, of Rockford, for certain appellants; HALL & HALL, of Rockford, for certain other appellant.

FRANK E. MAYNARD, of Rockford, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

The defendants, J. B. Franceschi, Mike Gulotta and Lena Gulotta, have appealed from a decree of the circuit court of Winnebago county directing the sale of real estate to satisfy instalments of alimony and support money allowed the plaintiff, Sylvia Franceschi, by a divorce decree of that court, entered against the defendant J. B. Franceschi. The decree from which the appeal is taken was not rendered in the divorce suit, but under a complaint filed by the plaintiff in the present suit, alleging fraudulent conduct on the part of Franceschi and the defendant, Mike Gulotta, by transferring the title to real estate from Franceschi to Gulotta before the divorce suit was instituted, so as to defeat the plaintiff of her marital rights in the property.

On August 9, 1943, the circuit court entered a decree granting a divorce to the plaintiff from Franceschi. The decree orders Franceschi to pay $25 each week as alimony and support money for their two minor children whose custody was granted to the plaintiff; also, to pay $150 solicitor's fee to the plaintiff. The plaintiff was awarded the use and occupancy of the homestead and Franceschi was directed to pay the taxes thereon, the costs of necessary repairs, maintenance and upkeep thereof, including premiums for policies of insurance for at least two thirds of the value of the homestead.

When the divorce decree was signed, Franceschi was $217 in arrears for temporary alimony. The decree of divorce makes the $217 and the alimony and support money a lien on the home place and on certain

premises known as number 636 North Chicago Avenue, Rockford, Illinois, which is designated by the parties as the avenue property. Gulotta was not a party to the divorce suit. In the divorce decree there is a finding that Franceschi has an equity and interest in the avenue property which is subject to some claim of Gulotta who purchased the property at sheriff's sale, but that Franceschi still retains an interest therein which is recognized by Gulotta. This litigation is not concerned with the home place.

On December 17, 1943, Franceschi was $801 in arrears in payments of alimony, support money and solicitor's fee, and a judgment was rendered against him for that amount in the divorce suit in favor of the plaintiff. On June 23, 1944, a similar judgment was entered against him for $536.50, being the amount he was in arrears from December 17, 1943, to June 23, 1944. The two judgments were in the sum of $1,337.50. The judgments not being paid, the plaintiff, on April 7, 1944, filed her complaint in the present suit against Franceschi, Mike Gulotta and his wife, Lena. There was personal service on Franceschi. He appeared personally in open court at the beginning of the hearing, and upon his failure to plead, he was defaulted and the complaint taken as confessed against him.

It appears from the record that it was necessary to satisfy instalments of the divorce decree by sale of defendant's real estate under sec. 20 of the Divorce Act. (Par. 21, ch. 40, Ill. Rev. Stats. 1943; [Jones Ill. Stats. Ann. 109.188]) (*Campbell v. Leonard*, 132 Ill. 232; *Henderson v. Craig*, 179 Ill. 395; *Anderson v. Anderson*, 380 Ill. 435.) The alimony is a debt against Franceschi in favor of the plaintiff, and the complaint alleging fraudulent conduct on the part of Franceschi and Gulotta to defeat her marital rights, is analogous to a creditor's bill. Where a husband conveys his property to defraud his wife of her marital rights she is within the protection of the statute

against conveyances made with intent to hinder and delay creditors. (*Deke v. Huenkemeier*, 289 Ill. 148, 155; *Deke v. Huenkemeier*, 260 Ill. 131.) The wife in such a case as here presented is considered as in the same position as a defrauded creditor. (*Deke v. Huenkemeier*, 289 Ill. 148; *Ellet v. Farmer*, 384 Ill. 343.) The divorce decree, as stated, makes the instalments of alimony and support money a lien on the avenue property, and the issuance of an execution and its return nulla bona was not essential to the jurisdiction of the court in this suit. (*Scott v. Aultman Co.*, 211 Ill. 612; *Scanlan v. Murphy*, 51 Minn. 536, 53 N. W. 799; *Cornell v. Radway*, 22 Wis. 260.)

█ It is not the rule in this State that a conveyance made in fraud of creditors will be declared absolutely void and the title reinstated in the former owner, or grantor. Such a conveyance is taken as void only as against such persons and their representatives as shall or might be delayed or defrauded. (*Deke v. Huenkemeier*, 289 Ill. 148.) The prayer of the complaint, based on the charge that by the fraudulent conduct of Franceschi and Gulotta the legal title to the avenue property became vested in Gulotta, and that the transaction between them be declared void and the property placed in the name of Franceschi, should not be granted.

██ The complaint prays for general relief and the plaintiff is entitled to such relief in the protection of her marital rights as the facts and circumstances appearing in evidence warrant. (*Geiger v. Merle*, 360 Ill. 497.) The decree dissolving the marriage, bars the plaintiff claiming any statutory interest in the avenue property excepting dower. (Sec. 23, Probate Act, *Seuss v. Schukat*, 358 Ill. 27.) The court had the right to protect the plaintiff's right of inchoate dower by the decree rendered in this suit. (*Deke v. Huenkemeier*, 260 Ill. 131.) The plaintiff was also entitled to have her right to alimony protected against a fraud-

ulent conveyance as provided by sec. 20 of the Divorce Act. (*Deke v. Huenkemeier*, 289 Ill. 148, 155.)

The plaintiff married Franceschi on November 11, 1911, and they lived together until November 29, 1942. Some time before July 1940, one Ross Linton, a real estate agent, at the request of Franceschi, secured a purchaser for the avenue property. Franceschi became enraged at the plaintiff because she would not release her inchoate dower in the property. On July 6, 1940, Linton secured a judgment of $200 for his broker's commission against Franceschi before a justice of the peace. A transcript of the judgment was filed in the circuit court. Execution was levied on the property and at sheriff's sale defendant Gulotta became the purchaser thereof. He bought the property valued at about $7,000, for $187.79, the amount of the judgment with costs, less $53.92 which Franceschi had paid on the judgment. Gulotta obtained a sheriff's deed on July 20, 1942.

On November 29, 1942, Franceschi attacked the plaintiff with a heavy cane and gave her a terrible beating. On December 4, 1942, the plaintiff filed a complaint for divorce. Upon Franceschi's promise to provide for his family and treat his wife kindly, the plaintiff dismissed her complaint.

Subsequent to the dismissal of her complaint for divorce, Franceschi again resorted to cruel and inhuman treatment of the plaintiff. On April 28, 1943, she filed her second complaint for divorce, which she successfully prosecuted and secured the decree of divorce which has been referred to. This decree is an exhibit in the record before this court and it appears therein that from January 17, 1936, until the second complaint for divorce was filed that Franceschi was guilty of vicious treatment of the plaintiff. It also appears from the record that Franceschi obstinately and wilfully refused to pay alimony and support money allowed the plaintiff by the divorce decree. The facts

above recited clearly indicate that Franceschi had in mind a determination to frustrate the plaintiff's right to alimony and her marital rights in his property dating back to July 1940. That he did conspire with Gulotta to defraud the plaintiff of her marital rights is admitted by Franceschi's default.

The present complaint alleges a conspiracy by Franceschi and Gulotta to perpetrate a fraud on the plaintiff beginning in the year 1940. The allegations of the complaint charging the conspiracy may be summarized as follows: Franceschi procured Gulotta under a concealed agreement and arrangement to bid $187.79 for the avenue property at the sheriff's sale. The property was sold to him at the sale for that amount and he subsequently obtained a sheriff's deed thereto. The property was worth $7,500, free of incumbrance, which was well known and understood by Gulotta. Gulotta claimed to have loaned Franceschi about $1,300 for repairing and improving said premises known as 636 North Chicago avenue, Rockford, Illinois, and to build a garage thereon; that the defendant, J. B. Franceschi, and Mike Gulotta, agreed that if Gulotta would buy said property at said sheriff's sale, he could hold the same as security for the money which he, Gulotta, had advanced to said Franceschi as security for his debt; that the said defendant, J. B. Franceschi, conspired and agreed with said defendant, Mike Gulotta, who had been his close and intimate friend for many years, to purchase said premises at said sheriff's sale, with the secret understanding that said premises were to be held by him thereafter in secret trust for the said defendant, J. B. Franceschi, so as to get the title thereto out of the name of said J. B. Franceschi, so as to defeat and cut off any right which the plaintiff might have in law or equity therein, and so that the same might be sold without notice to plaintiff.

There is some criticism by counsel for appellants directed against the decree based on the fore-

going allegation of the complaint and which should be disposed of. In the case of *Bostwick v. Blake,* 145 Ill. 85, the wife of one Barnum Blake, on October 12, 1889, obtained a judgment against him for alimony. The decree was rendered in October 1888, and she had a writ of attachment levied on real estate formerly belonging to her husband. Appellant, Bostwick, intervened and claimed title to the real estate under a sheriff's deed, dated August 16, 1876. It was charged by the wife that Bostwick held the real estate in secret trust for Blake and the deed was void as to her right to alimony. The court held that where a party obtains a sheriff's deed for the land of a debtor, in pursuance of an arrangement with the latter, and holds the same in secret trust for the debtor, the conveyance will be fraudulent in law and void as to his creditors. It matters not that the transaction may be upon a valuable consideration, if it lacks the element of good faith. In such cases the conveyance is void both as to existing and subsequent creditors. The fraud is a continuing one, and may actually operate as such, as well in reference to debts contracted after, as before the conveyance. (See also *McKey v. Cochran,* 262 Ill. 376.)

As to the rights of the appellant, Franceschi, the rule is that a defendant to a complaint in chancery, where a default and decree *pro confesso* has been entered against him, may on appeal contest the sufficiency of the complaint, or that its averments do not justify the decree. He cannot, on appeal, question the want or sufficiency of the evidence upon which the court acted. (*Monarch Brewing Co. v. Wolford,* 179 Ill. 252; *Dunfee v. Mutual Building & Loan Ass'n,* 206 Ill. 133.) The averments of the complaint are sufficient to sustain the decree.

The answer of Gulotta denies that Franceschi procured him (under a concealed agreement or any other agreement) to bid upon the premises sold at sheriff's

sale. It alleges that, Franceschi was indebted to Gulotta in the amount of $1,300, represented by a judgment note dated July 1, 1937, bearing interest at three per cent per year, and the proceeds of which note had been used in the improvement of the said premises; that Gulotta knew that Franceschi was indebted to his brother, N. V. Franceschi of California, in the amount of $4,500, which money was used in building the house on the said premises; that when Gulotta was advised by Franceschi that the premises were to be sold, he insisted he was going to purchase it at said sale in order to recoup his own money invested in the premises; that before making the purchase at the sale, he agreed with N. V. Franceschi that upon reselling said premises he would pay him the amount then unpaid on his note; that he did on or about February 15, 1944, pay $500 to N. V. Franceschi to be credited on interest, and on April 26, 1944, paid to N. V. Franceschi on said note $550; that the divorce litigation between plaintiff and Franceschi so beclouded the title to the premises that Gulotta could not sell them in compliance with a deal which Gulotta negotiated in the summer of 1943, so that he applied whatever spare money he had to the note held by N. V. Franceschi; that the sheriff's deed is good and sufficient at law; and is not void for the reasons stated in the complaint; and should not be set aside nor should the title be placed in Franceschi.

After part testimony was heard, and the chancellor indicated that the charging allegations of the complaint had been proved by the plaintiff, Gulotta obtained leave to file a counterclaim. The counterclaim alleges payments made by Franceschi on Gulotta's note for $1,300 as interest which was due semiannually.

No interest was paid on the note by Franceschi on Jan. 1, 1940, nor thereafter. On an accounting of rents collected by Gulotta for the avenue property, his expenditures for taxes and repairs, a computation of the

balance due on his note, and an allowance of $299 advanced by Gulotta for purchasing the property at sheriff's sale, the chancellor decreed that there was due Gulotta $622.76. This amount is not disputed by the plaintiff.

It appears from the record that N. V. Franceschi held Franceschi's note for $4,500, dated Jan. 1, 1936, on which Franceschi, according to indorsements on the back of the note, paid the interest semiannually, the last payment being on July 30, 1940. This note recited: "This note is secured by unencumbered six-room residence located at 636 North Chicago Avenue, Rockford, Illinois."

It appears from the evidence the answer and counterclaim of Gulotta as follows: When Gulotta was advised by Franceschi that the property was going to be sold, he insisted that he was going to purchase it at the sheriff's sale in order to recoup his own money invested in the property, and before making the purchase at the sale, agreed with N. V. Franceschi that upon reselling the property he would pay to N. V. Franceschi the amount unpaid on his $4,500 note, representing money which had been used to improve the property. In December 1940, Gulotta wrote to N. V. Franceschi and informed him that if Gulotta got title to the avenue property, he would see to it that N. V. Franceschi was paid as soon as the property was sold. That Frank North, the attorney for N. V. Franceschi, sometime in the early part of August 1943 had a conversation with Gulotta about the payment of the note for $4,500. Gulotta stated to North that there was some "disturbance" in the title to the avenue property through a divorce decree. He said that he would take care of the note; and that he thought there would be enough from the sale to pay the note without interest. The "disturbance in the title" and the "sale" referred to a sale of the avenue property which Gulotta had negotiated in 1943, but which failed be-

cause the purchaser would not accept the title without the signature of the plaintiff.

On July 25, 1943, Gulotta wrote to N. V. Franceschi as follows: "Received your letter and will say that your offer sounds very good to me. As you probably know the sale of the property hit a snag a couple of times already, due to the greed and meddling of somebody you know, but our attorneys are working on the case and are hopeful that in the near future a satisfactory solution will be found, one way or other. You can depend on me that everything will be attended to in justice and fairness to all concerned."

On December 28, 1943, North received the note of $4,500 from N. V. Franceschi and thereafter North examined the records at the court house and he ascertained that N. V. Franceschi did not have a mortgage on the avenue property. On February 8, 1944, Gulotta gave $500 to North which North credited as an interest payment on the note. On February 15, 1944, North wrote to Gulotta as follows: "I have heard from N. V. Franceschi and I have authority from him to sell the note of Dr. J. B. Franceschi at 20 per cent of its face value less interest. The entire sum of $500.00 which you paid on this note was credited to interest; but it is my understanding that Mr. N. V. Franceschi will accept the $500.00 as a payment on the principal of the note as it stood prior to the payment of $500.00. Please get in touch with me if you are interested." On April 26, 1944, Gulotta sent to N. V. Franceschi a draft for $510 as a payment on the note.

From the foregoing it is clear that N. V. Franceschi knew in 1940 that Gulotta had purchased the avenue property and he was bound to know that Gulotta, after he secured sheriff's deed in 1942, could give a valid deed for the property to a bona fide purchaser which would be clear of his secret lien, (if any he held on the avenue property under the terms of his note). Having accepted payments on his note after his knowl-

edge that Gulotta had secured a deed to the property it would not be equitable nor just to allow him to attack the deed and claim his alleged secret lien in preference to the rights of the plaintiff. (27 C. J. p. 482, p. 857, sec. 826; *Milan Bank v. Richmond,* 280 Mo. 30, 217 S. W. 74, 9 A. L. R. 353; *Rappleye v. International Bank,* 93 Ill. 396.) The decree should not be reversed because N. V. Franceschi was not made a party to this suit on objection of the appellants first made in this proceeding in this court. (*Krzeminski v. Krzeminski,* 285 Ill. 113; *Heinroth v. Griffin,* 242 Ill. 610.)

It is stated by Gulotta in his verified counterclaim that, "Gulotta informed Franceschi he would bid at the sale and if there was no redemption and if he secured a deed he would offer the place for sale and pay out of the proceeds, the money he had advanced, also the note held by N. V. Franceschi and he would give the balance to the defendant." (Franceschi.) The counterclaim prays for a decree declaring title to the avenue property to be held in trust for the benefit of Franceschi, and ordering him to pay to Gulotta within a short day, all monies advanced by Gulotta on account of his agreement with Franceschi, and interest on the $1,300 note; and that on default the property be sold and out of the proceeds Gulotta be paid all monies he has advanced, as aforesaid, and that balance due N. V. Franceschi on his note be paid, and remainder brought into court to be paid as equity may require.

The counterclaim was prepared in the light of the testimony introduced by the plaintiff and an analysis of the evidence is not called for. However, we have carefully examined the evidence and it cannot be said that there is no evidence sustaining the decree finding that Gulotta held the property in secret trust for Franceschi, nor that the decree is against the manifest weight of the evidence. It is held in the case of *McKey v. Cochran,* 262 Ill. 376 that, a conveyance

of land by a debtor, to be held wholly or in part in trust for him, is a fraud upon the creditors whether so intended or not, and the conveyance is void both as to existing and subsequent creditors, as the fraud is a continuing one.

The decree is long and only those parts of it which are the matter of controversy between the parties will be summarized.

The decree orders as follows: Defendant Franceschi to pay to Gulotta within ten days the sum of $622.76, and defendant Franceschi to pay to plaintiff within ten days, her judgments of $801 and $536.50. Defendant Franceschi to pay to Gulotta within ten days the sum of $1,050 with interest. Gulotta is entitled to a first lien against the premises in the sum of $622.76 with lawful interest and to have the same out of the proceeds of any sale pursuant to this decree. Plaintiff is entitled to a lien against premises in the sum of $1,336.50, and to have the same paid out of the proceeds of any sale pursuant to this decree, subject to the lien of Gulotta. Plaintiff is entitled to a continuing lien against the premises in accordance with the terms of the decree of divorce in Cause No. 50582, and in accordance with ch. 40, sec. 21, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 109.188], entitled, "Lien of decree sales," for all past due, present and future payments of alimony and support and "other items in said decree mentioned." Gulotta is entitled to a lien against the premises for $1,050 with interest, and to have the same paid out of the proceeds of any sale pursuant to this decree, subject to the first lien of Gulotta and the liens of plaintiff. In default of said payments the premises, or so much thereof as may be sufficient to realize the amount so due Gulotta, the plaintiff, and the costs, including the fees, disbursements and commissions on the sale, and which may be sold separately without material injury to the parties interested, be sold at public vendue for cash in hand to

the highest bidder, etc., subject to unpaid taxes and subject to the continuing lien of plaintiff for all other past due, present and future payments of alimony, "and other items mentioned in the decree of divorce entered in Cause 50582," and in accordance with ch. 40, sec. 21 of the statutes. That the master in chancery execute this decree, etc. That the master retain his fees and disbursements, pay the court costs, and distribute the balance to the parties as their rights are found in the decree.

A part of section 45 of the Chancery Act reads as follows: "Whenever, by any decree, any party to a suit in equity shall be required to perform any act other than the payment of money, or to refrain from performing any act, the court may, in each such decree, order that the same shall be a lien upon the real or personal estate, or both, of such party until such decree shall be fully complied with; and such lien shall have the same force and effect, and be subject to the same limitations and restrictions, as judgments at law."

The plaintiff has assigned cross-errors objecting to that part of the decree which awards Gulotta $622.76 as a first lien on the property, and also allows him a lien for $1,050 subject to Gulotta's first lien. The basis of the cross-errors is the charge that Gulotta does not come into a court of equity with clean hands and which charge was made by the plaintiff in her reply to Gulotta's counterclaim.

As to the item of $622.76 it appears from the record that Gulotta consulted an attorney before the sheriff's sale and he was advised to buy the property to protect his note for $1,300. We do not understand that the plaintiff in her argument contends that the allowance of the $622.76 by the terms of the decree should be stricken from the decree. The item for $1,050, was paid in two payments. The first one was made after Gulotta was well aware that the plaintiff claimed some

right in the avenue property and that she had secured a divorce decree against Franceschi. Gulotta and Franceschi were good friends and in constant communication regarding the situation and developments concerning the avenue property, since the year 1940. The second payment was made after Gulotta was served with a summons in the present suit, in which Gulotta was charged with buying the property at the sheriff's sale in secret trust for Franceschi. The letter of Gulotta to N. V. Franceschi on July 25, 1943, was written under the guidance of Franceschi. The payments were made by Gulotta, according to his testimony, because he thought that the note of N. V. Franceschi created a lien on the property which Gulotta was obligated to pay.

The effect of the decree making the $1,050 a lien on the avenue property is to subrogate Gulotta so that he succeeds, *pro tanto,* to the rights of N. V. Franceschi under his note of $4,500 against Franceschi. (*Bruschke v. Wright,* 166 Ill. 183, 195.) By making the payments on the note Gulotta could enforce only such rights as N. V. Franceschi could enforce against Franceschi under the note. (60 C. J., p. 723.) Secret liens are not favored either in law or equity; to allow an impairment of the divorce decree making alimony and support money a lien on the avenue property is similar to a collateral attack on a decree by a secret lien holder. (*Heinroth v. Griffin,* 242 Ill. 610.) See also *Schechner v. Oriental Holding Co.,* 107 N. J. Eq. 600, 153 Atl. 704.) Making this claim a lien on the property was error.

By her acquiescence in the present decree directing the master in chancery upon sale of the avenue property to convey the property to the purchaser in fee simple and to divide the proceeds of the sale as provided in the decree, the plaintiff is estopped to claim her inchoate right of dower in the property. (*Adams v. Storey,* 135 Ill. 448.)

That part of the decree making the claim of Gulotta for $1,050, a lien on the premises is hereby reversed. In other respects the decree is affirmed.

*Affirmed in part and reversed in part and cause remanded.*