Ronald SAX and Mark Sax, Minors, by their Next Friend and Natural Guardian, Ruth Zeffert Sax, and Ruth Zeffert Sax, Individually, Appellants,

v.

George D. SAX, Individually and as Trustee et al., Appellees.

No. 18453.

United States Court of Appeals
Fifth Circuit.

July 31, 1961.

**134**

Albert M. Lehrman (of Lemelman & Lehrman), Miami, Fla., for appellants.

W. G. Ward, Ward & Ward, Miami, Fla., for appellees, George D. Sax, Individually and As Trustee, and Rhoda Sax.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This action was brought in the Southern District of Florida to set aside a supplemental trust agreement on the grounds of fraud. It was instituted by Ruth Sax, individually and as guardian of her two minor children. She alleged that the supplemental agreement was executed for the purpose of fraudulently depriving her of a fair separate maintenance allowance from her husband, Louis Sax, one of the beneficiaries of the trust. Jurisdiction was on diversity only, 28 U.S.C.A. § 1332, as a suit between Ruth Sax, a resident citizen of Florida, and the defendants, Louis (husband) and George (father-in-law) Sax, citizens of Ohio and Illinois respectively. Service was obtained during temporary presence of defendants in Florida.

This relatively simple suit has been complicated somewhat by two factors with which we must deal. First, virtually everything and everybody connected with the trust is situated in Illinois. This includes the trust *res* as well as the trustee, settlors and beneficiary of the trust. Next, at the time of the allegedly fraudulent supplemental agreement, no separate maintenance settlement had yet been awarded the wife. To the comprehensive fraud allegations contained in the wife's second amended complaint the defendant-appellees filed a motion to dismiss. The grounds asserted were (1)

failure to state a claim, (2) situs of trust is Illinois, (3) under construction of trust instrument the wife had "no vested rights," (4) the trust is controlled by Illinois law, and (5) absence of an indispensable party, Max Sax. The District Court sustained this motion without disclosing the basis for its holding. We are completely in the dark. This lack of illumination compels us to canvass every possible theory on which dismissal might have been based. Consequently, several questions are raised by this appeal.

The first one relates to jurisdiction over the subject matter. This is the question of the power of a Federal District Court in one State to determine the validity of an agreement executed in another State, between parties who are residents of that State, solely by obtaining personal jurisdiction over the defendants in the State of the forum. Second, the broad question is presented whether the complaint adequately states a claim upon which relief can be granted under the applicable law. And finally, the point is raised as to whether all necessary parties to the action have been joined.

A brief statement of the facts will suffice. The original trust agreement was executed in Illinois in 1938. The settlors were George D. Sax, his wife, Rhoda Sax, and a brother, Max Sax. It named as beneficiaries the four minor sons of George Sax. Under the provisions of the trust, each of the beneficiaries was to receive his portion of the income of the trust from the time he reached the age of twenty-one until his thirtieth birthday at which time each was to receive his share of the corpus. George Sax was named the trustee and thereby sole administrator of the trust. The instrument expressly provided that no agreements made by the beneficiaries were to be binding on the trust, nor were the creditors of any of the beneficiaries to be able to reach either the corpus or income of the trust. It bears the usual earmarks of a spendthrift trust.

In 1947 Louis Sax, one of the sons named as a beneficiary, married Ruth Sax, the wife-appellant in the present action. Over the next four years two children were born to this marriage. It was, however, far from successful and in 1951 Ruth Sax filed suit in Dade County, Florida, for separate maintenance and support against her husband, Louis. The circumstances and occurrences which took place during the pendency of this suit are of significance. First, during this entire time Louis, the husband, concealed completely the existence of the trust and his beneficial interest therein. It was not until some seven years after the entry of a support decree in the domestic relations proceeding that the wife first learned of the original trust. Next, a few days prior to the entry of that support decree in the Florida State Court, George Sax, Rhoda Sax and Max Sax entered into a supplemental agreement with Louis Sax to modify the trust instrument.

This modification altered significantly the provisions by which Louis was to continue receiving his share of the income until his thirtieth birthday and on that date to receive the corpus. The new provisions specified that income from the trust was only to be distributed to Louis as the "Trustee, in his sole discretion, may deem necessary or advisable * * *." When Louis reached his thirtieth birthday the trustee was to retain the corpus of the trust but to have within his sole discretion the power to distribute whatever portions, if any, of the corpus that he "deems to be in the best interest of Louis H. Sax; * * *." In addition when that date was reached the trustee was to have almost unlimited power and flexibility in administering Louis' share of the trust "irrespective of any other provision in said Trust agreement."

Without knowledge either of the original trust or this supplemental agreement the wife pursued the separate maintenance suit to a final decree based upon a stipulation of settlement between her and her husband. By that agreed decree the husband agreed to pay $50 a week for the support of the wife and the minor children. Soon after learning in 1958 of these concealed matters, the wife brought

this action to set aside the supplemental agreement. To establish pecuniary detriment she claimed further that the payments under the original separation agreement are inadequate and to be adequate the payments should be $700 per month.

■ We turn, first, to the contention made by the appellees that this suit cannot properly be maintained without the joinder of Max Sax as a party since he was one of the signatories to the supplemental agreement under attack and a settlor of the original trust. As he is now a resident of Florida, his joinder would defeat diversity jurisdiction.

The answer to this question depends on whether Max is or is not an "indispensable" party rather than merely a "necessary" party under F.R.Civ.P. 19 (a), 28 U.S.C.A. and the numerous court interpretations of it. 3 Moore, Federal Practice § 19.05 at 2144, § 19.19 at 2206. Of course under subsection (b) of that rule the court may proceed without the joinder of such "necessary" parties when such joinder would deprive the court of jurisdiction of the parties before it.

The answer here is readily apparent. The controversy is over a supplemental agreement which altered the respective rights and duties of the trustee and beneficiary only. It was essentially an agreement between them changing their future relationship in the administration of the trust. True, it was signed by the remaining settlors, Rhoda and Max. But Max is neither a trustee nor a beneficiary under the trust. He does not stand to be deprived of any beneficial interest, nor receive a greater interest, depending on the outcome of this litigation. Under the allegations as set forth in the wife's complaint, this is a case of the father and son conniving to defraud her and her children. Their method was a simple, modifying supplemental agreement. Perhaps Max had to join in the instrument to make it fully effective. But setting aside this supplemental agreement and defeating this plan would have no effect on Max. No action would have to be taken by him. His position would not be changed nor his interest altered. Nullifying the supplemental agreement would merely restore the original trust instrument and Max to the same position each had all along had.

■ It follows that Max is not an indispensable party under the Rule as it has been interpreted by this and numerous other courts. The " * * * test of indispensability is whether the absent party's interest * * * is such that no decree can be entered * * * which will do justice between the parties actually before the court without injuriously affecting the rights of the absent party." Chance v. Buxton, 5 Cir., 1948, 170 F.2d 187, at page 188; Lawrence v. Sun Oil Company, 5 Cir., 1948, 166 F.2d 466, at page 469. The principles of equity as well compel this result. Cf. Bourdieu v. Pacific Western Oil Co., 1936, 299 U.S. 65, at pages 70–71, 57 S.Ct. 51, 81 L.Ed. 42; McRanie v. Palmer, D.C.Mass.1942, 2 F.R.D. 479, at page 482.

■ Next we turn to the question of jurisdiction of the District Court over the subject matter. The primary basis for appellees' jurisdictional attack is the contention that since the action involves a *thing*, the trust, it is an action *in rem* and therefore local in nature. That is, it is local to Illinois. On that thesis it is urged that the cases holding that a District Court may not act upon property not located at least partially within its District are compelling authority that a court sitting in Florida may not alter or administer a trust having its legal and actual situs in Illinois.

This approach, however, misconceives the nature of the present action. The complaint does not ask the Court to exercise dominion over any property, nor would the exercise of jurisdiction require it to supervise the administration of the trust. The complaint merely seeks to have the Court, utilizing its equitable powers, compel a person to undo a fraudulent conveyance of property. The party

charged with perpetrating the fraud, and the party acquiescing in and benefiting by the fraud are each before the Court. To grant the requested relief the Court would merely be required to declare as to the parties before it that the agreement between them is invalid because of fraud and then through coercive sanctions against the guilty parties compel them to take suitable action. In that simple manner the entire relief sought would be granted. The supplemental agreement would be nullified and the original trust arrangement reinstated. The power and responsibility of Illinois would in no way be affected.

Such a situation presents the typical case of an *in personam* or transitory action. Cf. American Louisiana Pipeline Company v. Gulf Oil Corporation, D.C. E.D.Mich.1957, 158 F.Supp. 13. This principle has received repeated application in cases involving trusts where the *res* lies outside of the jurisdiction of the court, but the relief sought can be obtained through personal obedience of the parties. 15 A.L.R.2d 610, at pages 616–618.

█ █ This brings us to the final question, whether the complaint adequately states a claim upon which relief can be granted. F.R.Civ.P. 12(b). The appellee's arguments on this reflect the misconception which, after twenty-three years of the Rules, is both surprising and too common. Cf. Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 214 F.2d 264, at page 265, note 1; Moritt v. Fine, 5 Cir., 1957, 242 F.2d 128, at page 132, note 2. The case as made by the pleadings is to be tested in the light of the liberal rule recently restated in Conley v. Gibson, 1957, 355 U.S. 41, at pages 45–46, 78 S.Ct. 99, at page 102, 2 L.Ed.2d 80. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of this claim which would entitle him to relief." Under this test there can be no doubt that the complaint adequately

charges fraud by the husband and the father in executing the supplemental agreement. As the District Court granted the motion to dismiss without an opportunity to amend, it is inescapable that the Court thought the complaint technically sufficient to meet the requirements of F.R.Civ.P. 9(b) concerning the specificity of allegations of fraud.

█ There is little dispute between the parties that the District Court sitting as a vicarious Florida court and applying the law of that state, including its conflicts of law rule, must resort to the law of Illinois in determining the substantive rights of the wife. The *res* of the trust is located in Illinois, both agreements pertaining to it were executed there and the trustee resides in that state. As to the validity of the supplemental agreement and the wife's rights in that regard, Illinois law controls.

Before entering into a discussion of the law, it is helpful to point out precisely the manner in which the wife claims to have been defrauded and just what relief is sought by her. There are two distinguishable, though, of course, related, controversies to be considered. And under the circumstances each must be separately maintained in separate forums even though at some stage it is likely that each court must take some tangible cognizance of the case pending in the other. The first is a domestic relations matter, concerning the terms of separation, the proper amounts to be awarded the wife and children for support. This would include the problems in relation to the final divorce apparently now pending before the State Court. These matters are purely for the determination of a local state court in Florida. The elements which it will or must consider, including the extent to which the husband's interest in a trust may be a relevant consideration effectuating the public policy of that State, are strictly within the purview of those domestic tribunals. But in view of George's non-residence that court is powerless to do anything to restore to Louis his pre-supplemental agreement rights under the original trust.

But the claim now asserted in the Federal Court by the wife is something entirely different. It is an assertion that she and her children whom she represents have been deprived of effective enjoyment of rights arising under the trust agreement because of fraudulent activities by other persons. More specifically, it is a suit to eradicate the harmful product of a scheme specifically alleged to have been fraudulent. It may be that to make relief fully effective further proceedings will be called for in the State divorce court after a victory in the Federal Court action. But it is evident that to get a determination that the supplemental agreement was conceived in fraud of her rights and perhaps of the Florida Court as well, some proceeding outside the divorce court is required. The Federal District Court has jurisdiction and is as suited as would be any other.

When the original separation action was brought in the Miami court, the husband was receiving substantial income from the trust. In addition he had a vested right to share in the corpus within the next few years. These facts, however, were carefully and deliberately concealed from the wife. Had the separation action proceeded to its conclusion under such circumstances, there can be no doubt that the wife would have been entitled to set aside on the grounds of fraud any support decree resulting from that deception. Keller v. Keller, 1936, 284 Ill.App. 198, 1 N.E.2d 773. But as pointed out such were not the circumstances. It was not a case of mere concealment or deception. Some twenty days before the support settlement decree was completed, but well after the date on which the wife had originally filed the separation action, the supplemental trust agreement in question was executed. Thus she was deceived and the property ostensibly put beyond her reach.

■ The Illinois law is clear that a wife in these general circumstances has some rights in the estate of her husband, and he is not permitted to deprive her of them through unfair transfers of property. These include her rights to separate maintenance and alimony. Franceschi v. Franceschi, 1945, 326 Ill.App. 494, 62 N.E.2d 1; Moore v. Moore, 1958, 15 Ill.2d 239, 154 N.E.2d 256.

■ Of more importance for our purposes, though, is the question of what protection is afforded these rights. This inquiry is expressly covered by statute. "Every * * * conveyance * * * made with the intent to disturb, delay, hinder or defraud creditors or *other persons* * * * shall be void as against such creditors, purchasers and *other persons*." Smith-Hurd Ill.Stat. Ch. 59, § 4 (1951). As interpreted by the Illinois courts, the wife is included in this broad protection. "If the wife be not technically a 'creditor,' she surely comes within the language 'other persons,' * * *." Tyler v. Tyler, 1888, 126 Ill. 525, 21 N.E. 616, at page 618. And her rights in this regard are as fully protected against fraudulent conveyances as are the rights of creditors. "With respect to her marital rights the law affords the same protection to a wife as to a creditor, and a voluntary disposition of property made with specific intent to defraud a future wife of her marital rights is void, the same as though made with intent to defraud future creditors." Deke v. Huenkemeier, 1919, 289 Ill. 148, 124 N.E. 381, at pages 384–385. Whether or not the protection afforded to the wife is applicable prior to the time she has filed suit for separation or divorce, there can be no question that once she has brought suit, Illinois courts stand ready to protect her against any fraudulent action thereafter taken by the husband. Draper v. Draper, 1873, 68 Ill. 17.

These principles could hardly bear more directly than they do on the present situation. The wife instituted suit for separate maintenance. While this was pending and prior to judgment in that action the husband effectively conveyed away his entire vested interest in a considerable amount of property. This action was taken for the specific purpose of preventing his wife from obtaining any effective enjoyment from his vested interest in the property, as would have

been the case had she and the Florida divorce court been honestly advised of her husband's true worth. She was, therefore, defrauded within the meaning of the statute.

As a part of this general argument some specific contention is made that the wife may not bring this action since she is not the holder of a judgment for the higher support payments ($700 per month) which she asserts she is rightfully due. This would indeed whipsaw her: she cannot get Illinois relief (in the Federal Court action) because Florida has not granted her a judgment; she cannot get Florida relief (increased award in the divorce court) because until set aside the supplement agreement extinguished all ownership of any value by Louis. Without the original trust property $700 per month could not be justified. It is doubtful that under F.R. Civ.P. 18(b) the wife would have to have standing as a judgment creditor in order to bring this Illinois suit to set aside a fraudulent conveyance. Nor does the Illinois law previously discussed compel such a result.

■ We simply say that as is true of many other cases too quickly disposed of on the pleadings, this case must go back for a suitable determination of the real merits. Demandre v. Liberty Mutual Ins. Co., 5 Cir., 1959, 264 F.2d 70; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, at page 693, 1958 A.M.C. 638; Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc., 5 Cir., 1958, 257 F.2d 162, at page 167. On this remand the District Court has ample power to fashion a decree which, on the facts actually developed, justice between the parties requires. If, due to some overlapping or contingency caused by the inescapable intertwining of this and the state court action, it becomes advisable or essential to enter some sort of conditional decree that, too, is fully within the power of the Court on remand. United Gas Corp. v. Guillory, 5 Cir., 1953, 206 F.2d 49, at page 53; Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139. F.R. Civ.P. 54(c) expressly recognizes that,

in the absence of default, the Court shall grant such relief as the case requires, and this could include declaratory judgments, conditional judgments, or both. For the determination of these questions, including the reach and application of Illinois law in the light of the actual facts and legal principles which we have discussed, this case must be remanded for trial or other consistent proceedings. What is said in saying that the pleadings say enough to warrant relief is no intimation as to what the facts finally say. That is for the trial. Fontainebleau Hotel Corp. v. Crossman, 5 Cir., 1961, 286 F.2d 926, at page 928; United States v. Bowen, 5 Cir., 1961, 290 F.2d 40; Brazier v. Cherry, 5 Cir., 1961, 293 F.2d 401.

Reversed and remanded.