**In re Nicholas FRASCATORE a/k/a Nicholas J. Frascatore and Laura Frascatore, Debtors.**

**Nicholas FRASCATORE and Laura Frascatore, Plaintiffs,**

v.

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, Defendant.**

**Nicholas FRASCATORE and Laura Frascatore, Plaintiffs,**

v.

**LOMAS MORTGAGE USA, INC., f/k/a The Lomas & Nettleton Company, Defendant.**

Bankruptcy No. 86–01495S.
Adv. Nos. 88–2185S, 88–2243S.

United States Bankruptcy Court, E.D. Pennsylvania.

April 13, 1989.

712

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtors.

Virginia R. Powel, Philadelphia, Pa., for HUD.

David Comroe, Philadelphia, Pa., for Lomas and HUD.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 co-trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The matters presently before us all appear to be manifestations of a herculean effort by the Debtors to avoid the loss of their home as the result of a mortgage foreclosure proceeding commenced on October 22, 1982, which resulted in a sheriff's sale of the home on November 5, 1984. The output of this effort has produced three bankruptcies prior to the instant Chapter 13 bankruptcy case, which itself has been pending over three years without confirmation of a Plan. Not only do we have before us a contested motion for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), filed by the purchaser at the sheriff's sale, THE SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (hereinafter referred to as "HUD"), but we also have simultaneously at issue two separate adversary proceedings, the most significant of which seeks to avoid the sheriff's sale under 11 U.S.C. § 544(b) and the Pennsylvania Uniform Fraudulent Conveyances Act, 39 P.S. § 351, et seq. (hereinafter "UFCA"). Like the grand finale of a fireworks display, this proliferation of litigation has resulted in submission of no less than eight separate Briefs over a period of less than a month, most of them filed late and hence giving rise to previously-threatened sanctions.

We reject the centerpiece of the Debtors' present efforts, the attempt to avoid the sheriff's sale on the basis of the UFCA, because it has not been established that this transaction was effected without "fair consideration" being given therein to the Debtors for the Premises. We also doubt that the two-year limitation on the invocation of avoidance powers under 11 U.S.C. § 544, far exceeded by this filing, can be waived. Consequently, the sheriff's sale of the property cannot be undone, and HUD is entitled to relief from the stay.

However, the efforts of the Debtors are not for naught, because they do succeed in obtaining a $2,000 recovery from their previous mortgagee, LOMAS MORTGAGE U.S.A. (hereinafter "Lomas"), in light of Lomas' violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* (hereinafter "TILA"). Concerned as we are for the plight of the Debtors and their family and noting the apparent and perhaps humane hesitancy of HUD to press for the eviction of the Debtors, we shall continue the stay in place for 90 days after Lomas liquidates its $2,000 monetary obligation to the Debtors. We shall also strike any claims of HUD or Lomas against the Debtors in their Chapter 13 case hereafter.

### B. PROCEDURAL HISTORY

The instant Chapter 13 bankruptcy case was filed on April 1, 1986. It was preceded by the November 11, 1982, filing of the Chapter 13 case of the Debtors, Bankr. No. 82–05505G, which was dismissed on May 30, 1984; a Chapter 7 case filed by the Husband–Debtor only, Bankr. No. 84–00728K, filed March 5, 1984, and dismissed on May 15, 1984; and a Chapter 7 filing of the Husband–Debtor only, Bankr. No. 84–01774K, filed May 31, 1984, which resulted in a discharge on April 10, 1985. The present case was delayed at its outset because required documents were not filed, the meeting of creditors pursuant to 11 U.S.C. § 341 was not scheduled until November 6, 1986, and the aforesaid meeting was not held until November 25, 1986. The confirmation hearing was scheduled on February 19, 1987, but alas, through over-

sight, was not listed before the court and consequently was not conducted at that time.

Neither the Debtors nor HUD nor the Trustee called the failure of the court to list the confirmation hearing to our attention and the case languished until HUD filed its motion pursuant to § 362(d)(1) on September 22, 1988. Then, on November 8, 1988, a continued hearing on that motion, confirmation, a motion to dismiss filed by the Trustee, and the Debtor's motion to abate payment arrears was scheduled. On that date, we were advised that Adversary No. 88–2185, involving the Debtors' attempt to set aside the sheriff's sale on the basis of the UFCA, was filed, and, that same day, Lomas had filed a proof of claim to which the Debtors wished to object. On that date, we therefore ordered any objection to Lomas' claim, ultimately manifested by Adversary No. 88–2243, and all of the matters in the main case and Adversary No. 88–2185, to be heard together on November 28, 1988.

On November 28, 1988, the parties came before us and we memorialized an agreement articulated at that time in an Order of that date. This agreement required the parties to file and serve a Stipulation of Facts which would constitute the record of the § 362(d) motion and the two adversary proceedings by December 21, 1988; and Briefs to be filed by January 20, 1989 (Debtors' Opening), February 10, 1989 (HUD and/or Lomas), and March 1, 1989 (Debtors' Reply). The confirmation hearing was rescheduled on March 21, 1989.

Unfortunately, both parties totally disregarded the November 28, 1988, order. Only after requests for extensions, which were in turn not kept, did *any* Stipulation of Facts appear—and then unexpectedly *three* separate and somewhat repetitious Stipulations of Fact were filed on February 22, 1989. Attempts at further extensions mutually agreed to between the parties led to our ultimate disapproval of the last request and a direction, in an Order of February 24, 1989, that the Briefs must be filed by March 3, 1989 (Debtors' Opening), March 24, 1989 (Lomas and/or HUD); and

March 31, 1989 (Debtors' Reply), or the parties' counsel would be subjected to monetary sanctions. The Confirmation Hearing was put off until April 18, 1989. Nevertheless, eight Briefs arrived in the following sequence:

| | |
|---|---|
| Brief of Debtors in Adv. No. 88–2243 | — March 10, 1989 |
| Brief of Debtors in Adv. No. 88–2185 | — March 14, 1989 |
| Brief of Lomas in Adv. No. 88–2243 and Brief of HUD on § 362 motion in main case | — March 27, 1989 |
| Brief of HUD in Adv. No. 88–2185 | — March 29, 1989 |
| Reply Briefs of Debtors in both Adv. Cases | — April 4, 1989 |
| Brief of Debtors in opposition to § 362 motion | — April 6, 1989 |

Finally, we should mention that, in the midst of this prolific briefing, HUD filed two motions to amend its pleadings, claiming that it committed the following "typographical errors:" (1) In its Answer in Adv. No. 88–2243, admitting rather than denying that it failed to give the Debtors a disclosure statement pursuant to the TILA; and (2) Designating its proof of claim filed on November 8, 1988, as on behalf of Lomas when it should have been designated as filed on behalf of HUD. At a hearing on March 28, 1989, we granted the motion requesting permission to effect the first amendment noted above, but reserved resolution on the motion relating to the second amendment until we rendered our final decision in all of the outstanding matters.

■ Because both counsel have unnecessarily proliferated and prolonged these matters and failed to heed the warning in our Order of February 24, 1989, we shall impose sanctions of $50 on counsel for the Debtors and $25 on counsel for Lomas and HUD.

Since the matters were submitted on not one, but three Stipulations, we need make no Findings of Fact. We shall therefore prepare this Opinion in narrative form, beginning with a recitation of the pertinent portions of the Stipulations.

## C. PERTINENT FACTS

1. NICHOLAS FRASCATORE and LAURA FRASCATORE, the Debtors, reside with their family, apparently including two dependent children, at 1436 Lycoming Street, Philadelphia, Pennsylvania (hereinafter "the Premises").

2. On February 25, 1980, in connection with the purchase of the Premises, the Debtors executed a mortgage secured thereby in the amount of $23,850.

3. If called to testify, the Debtors would state that Lomas failed to give either Debtor a TILA disclosure statement in connection with the transaction of February 25, 1980. After a search of its files, Lomas was unable to locate a TILA disclosure statement in connection with the transaction, although, per the amendment to its Answer, it does not admit that none was given.

4. On or about April 1, 1982, and thereafter, the Debtors defaulted on their mortgage payments. On October 22, 1982, Lomas filed a mortgage foreclosure action in state court against the Debtors which ultimately resulted, after delays caused by stays arising from the Debtors' various bankruptcy filings, in a default judgment. Damages were ultimately reassessed against the Debtors in that action in the amount of $32,323.26 on October 3, 1984.

5. On November 5, 1984, at a sheriff's sale in execution on the foreclosure judgment, quoting the parties' Stipulations, the Premises "was purchased by the attorney on the writ for Lomas for a bid of $1,975.00, the upset price, and that bid was assigned to HUD."

6. On November 19, 1984, settlement occurred between the sheriff and HUD as a result of the sale and, on December 6, 1984, a sheriff's deed conveying the Premises to HUD "for and in consideration of the sum of ONE THOUSAND NINE HUNDRED FIFTY DOLLARS ($1,950.00)" was filed.

7. At the time of the transfer of the Premises to HUD, counsel representing both Lomas and HUD in this matter filed a Certification regarding the City of Philadelphia Real Estate Transfer tax payable in the sale transaction, which stated that the fair value of the Premises was $32,323.26.

8. At all pertinent times, the Debtors were insolvent within the meaning of the UFCA.

9. By order of this Court and by effect of Bankruptcy Rule (hereinafter "B.Rule") 3002(c), the bar date for filing proofs of claims in the instant bankruptcy case was February 4, 1987.

10. On March 5, 1987, the Debtors filed a secured proof of claim on behalf of HUD in the amount of $1,950, based solely upon HUD's purported lien in the Premises in this amount pursuant to 11 U.S.C. § 550.

11. On November 8, 1988, Lomas filed a secured proof of claim on its own behalf in the amount of $44,556.37, based upon the mortgage of February 25, 1980.

12. The Debtors have paid to the Chapter 13 Trustee at least $2,035.00, pursuant to their proposed Chapter 13 plan,[1] but have made no payments to HUD or to Lomas since they filed the instant bankruptcy petition.

13. The Husband–Debtor, the primary wage-earner, would testify that his work history was spotty due to difficulties in obtaining and retaining employment for reasons beyond his control from 1980 to 1987, and the Wife–Debtor would testify that she did not work regularly until 1983. However, since the beginning of 1988, the Husband–Debtor has had a steady job from which he earns about $300.00 gross weekly, and, since 1983, the Wife–Debtor has been steadily working at a job from which she presently nets $189.00 a week.

## D. THE DEBTORS ARE NOT ENTITLED TO SET ASIDE THE SHERIFF'S SALE OF THEIR HOME

The sheriff's sale of the Debtors' property occurred on November 5, 1984. The instant bankruptcy proceeding was

---

1. The Debtors' Amended Plan calls for payments of $5.00 monthly for six months, and $200 monthly for the next thirty months. Avoidance of the sheriff's sale of the Debtors' home was apparently assumed in the preparation of the Debtor's Plan.

commenced on April 1, 1986. The Debtors recognize that they cannot invoke 11 U.S.C. § 548, which has frequently been used as a vehicle for setting aside sheriff's sales under certain conditions, because it applies to only a transfer "made or incurred on or within one year before the date of the filing of the petition." *See Butler v. Lomas & Nettleton Co.,* 862 F.2d 1015, 1015–16 n. 1, 1019 (3d Cir.1988) (Court recognizes cases reaching various conclusions as to the issue of whether a "foreclosure is a transfer" for purposes of 11 U.S.C. § 548 without resolving the issue,[2] and holds that an action pursuant to § 548(a) must be brought within one year from the date of the sheriff's sale, as opposed to the date of the passing of the sheriff's deed after the sale).

The Debtors are therefore forced to resort, at this juncture, to a basis other than 11 U.S.C. § 548 for attacking the sheriff sale of their property, which does not have a built-in durational limit which they cannot meet.[3] Their alternative choice is the provision comparable to § 548(a)(2), concerning "constructive fraudulent conveyances," in the UFCA, 39 P.S. § 354, which reads as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

The Debtors contend that they are able to invoke the UFCA in the context of their bankruptcy case by virtue of 11 U.S.C. § 544(b), which provides as follows:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The ability of a trustee to invoke applicable state law which can be used to avoid fraudulent conveyances, as well as § 548, through the medium of § 544, seems clear and is supported by precedent. *See In re Mankin,* 823 F.2d 1296, 1298–99 & n. 1 (9th Cir.1987); and *In re Pinto Trucking Service, Inc.,* 93 B.R. 379, 384–85 (Bankr.E.D. Pa.1988). *Cf. Copter, Inc. v. Gladwin Leasing Inc.,* 725 F.2d 37, 39 (3d Cir.1984) (trustee may invoke applicable state law relating to preferences, as well as 11 U.S.C. § 547 of the Bankruptcy Code, to attempt to avoid preferences, by the medium of § 544(b)). It likewise seems clear that the Debtors here may "stand in the shoes" of the Trustee and assert his powers pursuant to 11 U.S.C. §§ 522(g)(1), (h). *See In re Aikens,* 94 B.R. 869, 872–73 (Bankr.E.D.Pa. 1989); *Cole, supra,* 81 B.R. at 329; *Corbett, supra,* 80 B.R. at 35; and *In re Butler,* 75 B.R. 528, 530 (Bankr.E.D.Pa.1987), *rev'd on other grounds sub nom. Butler v. Lomas & Nettleton Co., supra.*

At the outset of our analysis, we will assume *arguendo* that the term "conveyance" as defined in 39 P.S. § 351, embraces a sheriff's sale, as we have held in reference to the term "transfer" in 11 U.S.C. § 101(50).[4] *But see* pages 719–20 *infra.* As in the case of a sheriff's sale attacked under § 548(a)(2), the Debtors, in

---

**2.** Cases in this jurisdiction supporting the view that a foreclosure sale is a transfer subject to avoidance pursuant to 11 U.S.C. § 548(a) include *In re Cole,* 81 B.R. 326 (Bankr.E.D.Pa. 1988); *In re Corbett,* 80 B.R. 32, 35 (Bankr.E.D. Pa.1987); and *In re Jones,* 20 B.R. 988, 994–96 (Bankr.E.D.Pa.1982). *Accord, In re Bundles,* 856 F.2d 815, 819–23 (7th Cir.1988); *In re Hulm,* 738 F.2d 323, 327 (8th Cir.), *cert. denied sub nom. First Federal Savings & Loan Ass'n v. Hulm,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984); *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203–04 (5th Cir.1980); and *Ananko v. Harsanyi,* 91 B.R. 231, 234–37 (D.N.J.1988).

**3.** It is not clear that this problem was not the making of the Debtors. We note that their present astute counsel also represented them in the cases of Bankr. No. 84–00728K and 84–01774K, the latter of which was pending during a good part of the one-year period after November 5, 1984.

**4.** While the 1984 amendment to 11 U.S.C. § 101(50), appears to resolve this point, *see Butler,* 75 B.R. at 531 n. 2, the Court of Appeals, in *Butler,* cited authority on both sides of the issue and did not indicate its view on the issue. 862 F.2d at 1015–16 n. 1.

order to succeed in setting aside the instant sheriff's sale on the basis of 39 P.S. § 354, are obliged to prove that the sale was effected "without fair consideration." *See Pinto Trucking Service, supra,* 93 B.R. at 388–90. In *Cole, supra,* 81 B.R. at 330–31, we posited four potential methods of determining whether "reasonably equivalent value" was obtained, for purposes of 11 U.S.C. § 548(a)(2)(A), as the result of a foreclosure sale in which the successful bidder was the mortgagee. After ruling out two of these methods of calculation, we held that, if either (1) comparing the liens cleared by the sale to the value of the property sold; or (2) comparing the amount of the bid at the sale to the debtors' equity lost in the sale, yielded a ratio of less than seventy (70%) percent, the sale could be set aside.

The Debtors here clearly fail either of the latter two alternative methods of calculation. The liens cleared off by the sale, which include a judgment of at least $32,323.26, appear to equal, if not exceed, the value of the property, which the transfer tax affidavit, upon which we relied in *Cole,* on a similarly-stipulated record, 81 B.R. at 328, and would therefore be inclined to rely on here, recited was $32,323.26. There is no evidence in the record supporting a higher value figure for the Premises as of the date of the sale. Likewise, the Debtors' equity in the Premises, as of the date of the sale, appears to be negative, or no more than zero (0). The bid of $1,975 obviously exceeded this figure.

■ The Debtors attempt to avoid this rather apparent result by arguing, principally, that HUD, not Lomas, was the "purchaser" at the sale, and therefore we should merely compare the bid of the third party purchaser (HUD) of $1,975 to the value of the Premises. *Compare Corbett,* 80 B.R. at 37. Secondarily, they contend that HUD may retain a right to indemnity against the Debtors which is unaffected by the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S. § 8103, and hence that no consideration passed to the Debtors in the sale. *See Cole, supra,* 81 B.R. 331 n. 2.

When it is recalled that the Debtors have the burden of proof on the issue of lack of "fair consideration" in the sale transaction, *See Pinto Trucking Service, supra,* 93 B.R. at 388–90, it is clear that the record does not support the Debtors' arguments. The pertinent paragraph of the Stipulations, quoted at Finding of Fact 5, page 715 *supra,* provides that the property "was purchased by the attorney on the writ *for Lomas*" (emphasis added), who then assigned *Lomas' bid* to HUD. This statement, in our mind, establishes that Lomas, not HUD, was the purchaser at the sale. A party can only assign what it already owns. Thereafter, to be able to assign a bid at the sale to HUD, Lomas must have had the bid by being the purchaser at the sale. Moreover, this conclusion makes logical sense here. Lomas obviously engaged in some negotiations as to its rights vis-a-vis HUD and, as a result of same, transferred its interest in the Premises to HUD. One of the elements transferred was undoubtedly Lomas' rights against the Debtors arising from the foreclosure judgment against them. The detailed content of the dealings between Lomas and HUD are of course not of record, are unknown, and are irrelevant. However, we can perceive no reason why the result of these post-sale negotiations should in any way impact the Debtors' rights vis-a-vis Lomas and HUD as of the time of the sale. The status of the parties at the time of *sale* itself is the only significant factor. *Compare Butler, supra,* 862 F.2d at 1019 (equitable ownership of a premises sold at a sheriff's sale vests at the time of a sheriff's sale, not at a subsequent time such as the passing of the sheriff's deed to the purchaser).

The presence of HUD in this transaction suggests that Lomas' mortgage on the Premises was governmentally-insured and, if this element and its potential ramifications on the post-sale rights of Lomas or HUD had been established in this record, this could have been a factor in the computation of whether the Debtors received "fair consideration" in the sale. However, no record has been developed on this issue

and therefore we cannot consider it.[5]

Therefore, we decline to set aside the sheriff's sale of November 5, 1984, because the Debtors have failed to prove that the sale was "without fair consideration" and hence within the scope of 39 P.S. § 354.

There are, moreover, at least two other reasons why we question whether the Debtors could, in any event, have prevailed on this claim. First, we note 11 U.S.C. § 546(a), which provides as follows:

> § 546. Limitations on avoiding powers
>
> (a) An action or proceeding under section 544, ... of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section ..., 1302, ... of this title; ...

The Standing Chapter 13 Trustee was automatically appointed in this case at the time of its filing on April 1, 1986. 11 U.S.C. § 1302(a). This action, in which the Debtors seek to "stand in the shoes" of the Trustee, was not commenced until November 8, 1988. No reason whatsoever for the delay in filing has been proffered. *See* B.Rule 9006(b)(2) (enlargement of time for any filing after the date for same has passed is permitted only upon a showing of "excusable neglect"). *See In re Vertientes, Ltd.*, 845 F.2d 57, 60–61 (3d Cir. 1988) (bankruptcy court has no discretion to extend a filing deadline unless "excusable neglect" is shown).

Not only did the Debtors have to contend with 11 U.S.C. § 546(a), but it appears that a UFCA action is subject to a two-year Pennsylvania statute of limitations. *See* 42 Pa.C.S. § 5524(3); and *In re Penn Packing Co.*, 42 B.R. 502, 505 (Bankr.E.D.Pa.1984). *But cf. United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1294–95 (3d Cir. 1986), *cert. denied sub nom. McClellan*

*Realty Corp. v. United States*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987) (without discussing the issue, the Court appears to apply the UFCA to a transaction which took seven years prior to suit; however, this result may be explained by the intervention of subsequent mediate transfers and the presence of actual fraud).

The response of the Debtors is that, by failing to plead either of these purported statutes of limitations in their Answer, as opposed to referencing them in its Brief on this issue, HUD has waived this issue. *See e.g., Zelson v. Thamforde*, 412 F.2d 56, 59 n. 10 (3d Cir.1969); *VanSant v. American Express Co.*, 169 F.2d 355, 372 (3d Cir. 1948); *In re Gurst*, 79 B.R. 969, 979 (Bankr.E.D.Pa.1987), *appeals dismissed*, C.A. No. 88–2092 (E.D.Pa. August 9, 1988), *aff'd*, 866 F.2d 1410 (3d Cir.1988); and 88 B.R. 57 (E.D.Pa.1988); and *In re American Int'l Airways, Inc.*, 77 B.R. 490, 492 n. 1 (Bankr.E.D.Pa.1987).

■ On the strength of these authorities, we agree that HUD has waived the application of 42 Pa.C.S. § 5524(3) by failing to plead the statute in its Answer.[6] This is clearly a statute of limitations, stating that an action enumerated therein "must be commenced within two years."

However, we have considerable doubt as to whether the two-year period set forth in § 546(a) after which "[a]n action under section 544, ... *may not* be commenced" (emphasis added) can be disposed of by the same analysis. Rather, we believe that the wording of this statute may render it a so-called "statute of repose," which is non-waivable. *See Luzadder v. Despatch Oven Co.*, 834 F.2d 355, 357–58 (3d Cir.1987) (42 Pa.C.S. § 5536, being a re-enactment of a statute providing that "no action ... shall be brought" after the designated period, is

---

**5.** We attach little significance to the contents of Lomas' proof of claim which, as we understand the Debtors' argument, should be considered as evidence that Lomas continues to assert a $44,-556.37 secured claim against the Debtors, and therefore "admits" that nothing was divested in the sale. As Lomas' attempt to "amend" this claim to assert it in the name of HUD suggests, this filing was apparently only made to establish a lien under 11 U.S.C. § 550 in the event that the sale was avoided. Moreover, as we indicate

at page 722 *infra,* this claim must be stricken as untimely.

**6.** The failure of HUD to even attempt to amend its Answer to plead this issue is rendered all the more indefensible when the belated attempts of counsel for Lomas and HUD to amend other aspects of their pleadings is considered. *See* page 714 *supra.*

a "statute of repose" despite the present wording of this statute's being identical to other, waivable Pennsylvania statutes of limitations). This conclusion is not supported by any authorities directly on point, but by the statements of certain courts, although admittedly in other contexts, that § 546(a) is jurisdictional in nature. *In re Butcher*, 829 F.2d 596, 600–01 (6th Cir. 1987); and *In re Oro Import Co.*, 52 B.R. 357, 359 (Bankr.S.D.Fla.1985), *rev'd on other grounds*, 69 B.R. 6 (S.D.Fla.1986).[7] If a bankruptcy court has no jurisdiction to hear a matter within the scope of § 546(a), then it would clearly seem that § 546(a) must be interpreted as a "statute of repose." We therefore doubt that we could entertain this claim at this time.

Finally, more generally, we question whether a sheriff's sale may, in any circumstances, be overturned as a constructive fraudulent conveyance on the basis of the UFCA. The principal argument of the Debtors on this point seems to be that, since § 548 authorizes such relief and "the same principles" should be applied in interpreting the UFCA as in interpreting § 548, *Tabor Court, supra*, 803 F.2d at 1299, sheriff's sales should be potentially subject to attack under the UFCA. HUD counters with a contention that the one-year limitation between the sheriff's sale and the bankruptcy filing contained in § 548, underscored by the result in *Butler*, should be applied in interpreting the UFCA. We do not think that this issue can be resolved as simplistically as either party proposes. The one-year limitation of § 548 is patently absent from the UFCA, thus making the *Butler* holding irrelevant here.[8] The *Tabor Court* reference was to the similarity between 11 U.S.C. § 548(c) and 39 P.S. § 359(2), and cannot reasonably be interpreted as a holding that all principles of § 548 can be incorporated into the UFCA. If this were so, the one-year limitation peri-

od of § 548(a) would be effectively eviscerated, because debtors could simply invoke the UFCA instead of § 548 and replace that limitation with the two-year period set forth in § 546(a).

Resolution of this issue in the Debtors' favor would require us to equate the term "conveyance" in 39 P.S. § 351 with "transfer" in 11 U.S.C. § 101(50), and the term "without a fair consideration" in 39 P.S. § 354 with "less than a reasonably equivalent value" in § 548(a)(2)(A). It would also require us to conclude that the explanatory terms "voluntarily or involuntarily" appearing in 11 U.S.C. §§ 101(50) and § 548(a) are merely explanatory surplusage, because it would require us to hold that 39 P.S. § 354 embraces an "involuntary transfer" even in the absence of such wording. It would further require us to assess what would be left of the maxim that a judicial sale can be overturned only when there is *gross* inadequacy of price and/or actual fraud, as opposed to when there is a mere inadequacy of price received in the sale. *See, e.g., Graffam v. Burgess*, 117 U.S. 180, 192, 6 S.Ct. 686, 692, 29 L.Ed. 839 (1886); *In re Stanley Engineering Corp.*, 164 F.2d 316, 318–20 (3d Cir.1947), *cert. denied sub nom. Root v. Galman*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948); and *Scott v. Adal Corp.*, 353 Pa.Super. 288, 295, 509 A.2d 1279, 1283 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1987). It is one thing for a bankruptcy court, pursuant to discrete federal bankruptcy law such as 11 U.S.C. § 548, to set aside "transfers" of all sorts, including actions pursuant to orders of state courts, for the benefit of creditors adversely impacted thereby. *See In re Pinto*, 98 B.R. 200 (Bankr.E.D.Pa.1989), *modifying*, 89 B.R. 486, 495–98 (Bankr.E.D.Pa.1988). However, it is quite

---

**7.** We note, however, that we have not accepted the conclusion of the *Butcher* court that, therefore, B.Rule 9006(a) is inapplicable in measuring the time-period of § 546(a). *See In re Day*, 82 B.R. 365, 365–66 (Bankr.E.D.Pa.1988). *See also In re Kaelin Associates Electrical Construction, Inc.*, 70 B.R. 412, 414–15 (Bankr.E.D.Pa. 1987).

**8.** The only query worth making in light of *Butler* is why the Debtors there failed to invoke the UFCA, if it would in fact have been available to them. But for the one-year limitation of § 548(a), the Butlers, who presented much more compelling facts than the Debtors, would have been able to avoid the sheriff's sale of their home.

another thing for a bankruptcy court to employ a state law, which it is bound to interpret consistently with interpretations of the highest court of the state, *see In re Frymire, Frymire v. Painewebber, Inc.,* 96 B.R. 525, 534–535 (Bankr.E.D.Pa.1989), to accomplish this same end, especially by interpreting the state law in a manner which the state courts have never done. *See Crossley v. Lieberman,* 90 B.R. 682, 694–96 (E.D.Pa.1988), *aff'd,* 868 F.2d 566 (3d Cir.1989) (federal court should abstain from deciding a claim under even a state law comparable to a federal law when it is uncertain what interpretation the state courts would give the state law).

We note that there is some authority for the principle that the term "conveyance," under 39 P.S. § 351, includes an involuntary transfer such as a foreclosure sale. *See Lefkowitz v. Finkelstein Trading Corp.,* 14 F.Supp. 898, 899 (S.D.N.Y.1936); *Franceschi v. Franceschi,* 326 Ill.App. 494, 62 N.E.2d 1, 4 (1945); *Catabene v. Wallner,* 16 N.J.Super. 597, 85 A.2d 300, 302 (1951); *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 27 N.E.2d 814, 816–17 (1940); *Langan v. First Trust & Deposit Co.,* 277 App.Div. 1090, 101 N.Y.S.2d 36 (1950), *aff'd,* 302 N.Y. 932, 100 N.E.2d 189 (1951); and Comment to § 1, Uniform Fraudulent Transfer Act, 7A UNIFORM LAWS ANNOT. 647 (1985). ("While the definition in the [UFCA] did not explicitly refer to an involuntary transfer, the decisions under that Act were generally consistent with an interpretation that covered such a transfer").[9] *Cf. United States v. Gleneagles Investment Co.,* 565 F.Supp. 556, 585 (M.D. Pa.1983), *aff'd, United States v. Tabor Court Realty Corp., supra* ("A transfer of funds is clearly a conveyance under the [UFCA].").

However, we note that, in all of the cases cited in the foregoing paragraph, the courts found an element of actual fraud or collusion on the part of certain parties to the judicial sale under attack. Therefore, these cases could have just as easily been decided under the principles set forth in *Graffam v. Burgess* and the cases following it which are cited at pages 719–20 *supra,*[10] as under the UFCA. More significantly, we have located *no* case in any jurisdiction, let alone in Pennsylvania, where a regularly conducted, non-collusive sheriff's sale has been set aside on the basis of 39 P.S. § 354, or its equivalent. We would, therefore, be hesitant to act on this basis.

Given our analysis of 11 U.S.C. § 546(a) as a statute of repose, the only effect of such a ruling would be to extend the one-year period of 11 U.S.C. § 548(a) to two years. Of course, here, the Debtors, without any excusable basis, filed the proceeding in issue comfortably beyond the two-year period. Given this fact, and the absence of a showing of an absence of "fair consideration" under even the rather liberal methods of measurement articulated in *Cole, supra,* we are obliged to conclude that the Debtors are not entitled to set aside the sheriff's sale of their home and to thus enter judgment in Adversary No. 88–2185 in favor of HUD.

## E. HUD IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

The essence of the Debtors' principal defense to HUD's motion to obtain relief from the automatic stay to obtain possession of the Premises, which the Debtors have inhabited over the past four and a half years since the sheriff's sale without making any payments to HUD or Lomas whatsoever, is that the sale should be set

---

**9.** However, the Uniform Fraudulent Transfer Act itself, a successor to the UFCA, specifically provides elsewhere that "reasonably equivalent value," *i.e.,* "fair consideration," is conclusively established if there is a "regularly conducted noncollusive foreclosure sale," thereby rejected the principles established in the cases cited at page 716 n. 2 *supra,* as to that Act. *See* § 3(b) of Act, and Comment thereto, 7A UNIFORM LAWS ANNOT., *supra,* at 650, 652.

**10.** Several of the cases wishfully cited by the Debtors for the principle that "courts throughout the country have avoided the transfer of property sold at sherriff [sic] sale pursuant to the provisions of UFCA" were, in fact, decided solely under the principles of *Graffam v. Burgess* and *not* under the UFCA at all. *See Hart v. Parrish,* 244 S.W.2d 105 (Mo.1951); and *Pender v. Dawse,* 1 Utah 2d 283, 265 P.2d 644 (1954).

aside, and HUD (or Lomas) therefore relegated to the position in which they stood in prior to the sale. *See In re Cole,* 89 B.R. 433, 436–38 (Bankr.E.D.Pa.1988); and *Cole, supra,* 81 B.R. at 327. It is clear that, having failed in their efforts to avoid the sale, the Debtors are unable to cure their now-gargantuan mortgage delinquency and reinstate their mortgage. *See In re Roach,* 824 F.2d 1370, 1377–79 (3d Cir. 1987); and *In re Brown,* 75 B.R. 1009, 1010–12 (Bankr.E.D.Pa.1987). Since the sheriff's sale cannot be avoided, the Debtors' rights in the Premises terminated irrevocably with the fall of the hammer in the sheriff's sale. *See Butler, supra,* 862 F.2d at 1019; and *In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985). We are without power to restore them.

■ In the alternative, HUD points to the period of over seven years that mortgage payments have not been made by the Debtors as an independent cause for relief from the stay pursuant to § 362(d)(1). The nine-month delinquency which had already accumulated as of 1983 was determined to be sufficient cause for relief from the stay in a prior motion filed by Lomas which resulted in an Opinion by this Court. *In re Frascatore,* 33 B.R. 687, 688 (Bankr.E.D. Pa.1983) (per GOLDHABER, CH. J.). Though this prior decision is not conclusive of the instant motion on the basis of *res judicata, see In re Norris,* 39 B.R. 85, 87 (E.D.Pa.1984); and *In re Taylor,* 77 B.R. 237, 240 (Bankr. 9th Cir.1987), the Debtors' stipulation that they have made no payments to HUD or Lomas since the filing of this case over three years ago suggests that the delinquency has continued to grow. No proposal of the Debtors to resolve the payment delinquency appears in this record; their Plan is obviously dependent on the unachievable result that the sheriff's sale of their home be set aside. Relief must therefore be granted to HUD. *See In re Kessler,* 76 B.R. 434, 437–38 (Bankr.E.D.Pa.1987) (failure to make payments is a substantial factor in deciding whether to grant relief from the automatic stay to a mortgagee).

■ The Debtors, in their final Brief, assert at some length the insupportable argument that HUD should develop some alternative to their eviction because of its mandate to prevent homelessness and its rights to obtain rent as an administrative expenses and some portion of the distribution of the Chapter 13 payments from the Trustee.

These arguments clearly have no legal basis. A party entitled to possession of property is not obliged to accept rent from the party in possession instead. There is no basis for imposing on HUD the status of "landlord of last resort" for mortgagors who fail to make mortgage payments. If HUD could not enforce its rights to evict parties residing in its property who have made no payments towards a mortgage in over seven years and whose property it has owned but from which it has collected no rent for over four years, HUD would be placed in the position of being mandated to provide free housing to all who come to inhabit its properties, even persons, like the Debtors, whose income exceeds $22,000 per annum. If placed in this position, HUD would doubtless have no resources left to assist those who are more needy and/or more worthy than the Debtors.

■ Nevertheless, the position of HUD that swift recovery of possession of the Premises bears any real significance to it is belied by its own tremendous delays in vindicating its rights. For this reason, we shall extend the Debtors' possessory period for at least 90 days after the Debtors receive the sum which we subsequently determine, at pages 722–23 *infra,* the Debtors are due to recover from Lomas. No further dispensations to the Debtors are, under these circumstances, appropriate.

## F. THE DEBTORS ARE ENTITLED TO STRIKE ANY PROOFS OF CLAIM OF HUD OR LOMAS.

The outcome adverse to the Debtors in Adversary No. 88–2185 and HUD's motion for relief from the automatic stay diminish the significance of the outcome of Adversary No. 88–2243. However, though it

may be largely a moral victory, the Debtors are entitled to prevail on all issues raised by them in this proceeding.

■ First, the proof of claim filed by Lomas on November 8, 1988, over 21 months after the bar date, was clearly filed untimely. The only circumstance in which such a late filing could be allowed is if Lomas could assert "excusable neglect" for its failure to make a timely filing. *See Vertientes, supra,* 845 F.2d at 59–61; and *In re Green,* 89 B.R. 466, 472 (Bankr.E.D. Pa.1988). However, Lomas has articulated no "excusable neglect" for its grossly-belated filing. We note that Lomas was listed as a creditor on the Debtors' Schedules and has apparently been aware of the existence of this bankruptcy case from the outset. This late claim must therefore be stricken.

■ Remaining is some consideration of HUD's claims, which include a $1,950 claim filed by the Debtors on its behalf on March 5, 1987, and HUD's attempt to amend this proof of claim in its motion contending that Lomas' claim was erroneously filed on behalf of Lomas instead of HUD, due to a "typographical error." Putting aside the fact that a "typographical error" is clearly a misnomer for a belatedly-perceived "legal error" in simply making the claim on behalf of the wrong party, we note that this error was not "noticed" until

the parties were in the midst of briefing. We conclude that the applicable B.Rules preclude HUD's attempt to amend the claim filed on its behalf by the Debtors at this time.

■ The prevailing B.Rule 3004, as it read at the pertinent time, effective prior to August 1, 1987,[11] provided as follows:

If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor. The clerk shall forthwith mail notice of the filing to the creditor, the debtor and the trustee. The creditor may thereafter file a proof of claim pursuant to Rule 3002 or Rule 3003, which proof when filed shall supersede the proof filed by the debtor or trustee.

If read literally, the previous version of B.Rule 3004 might have been read as granting a creditor on whose behalf a claim is filed a right to file a superseding proof of claim at any time thereafter. We agree with the Debtors that this is not a logical reading of former B.Rule 3004, because it would frustrate the policy of certainty of the claims process that must be established, for the benefit of all creditors, as of a given bar date. This policy underlies the many decisions which hold that bar dates must be strictly construed. *See, e.g., Vertientes, supra,* 845 F.2d at 60–61; *In re*

---

11. Effective August 1, 1987, B.Rule 3004 was amended to read as follows:

> If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith mail notice of the filing to the creditor, the debtor and the trustee. A proof of claim filed by a creditor pursuant to Rule 3002 or Rule 3003(c), shall supersede the proof filed by the debtor or trustee.

In its present form, B.Rule 3004 would seem to preclude *any* filing superseding a claim by a creditor if it has failed to do so by the bar date, pursuant to B.Rule 3002(c), even if the debtor or trustee filed a claim on the creditor's behalf within 30 days *after* the bar date, as the debtor or trustee is empowered to do. This could be read as binding a creditor who

fails to file a proof of claim of its own to the terms of any proof of claim filed by the debtor or trustee, no matter how far off the mark of the creditor's legitimate claim it is.

The new version of B.Rule 3004 should not be read to so completely place the non-filing creditor at the mercy of debtor or the trustee. Rather, as Collier suggests, 8 COLLIER ON BANKRUPTCY, ¶ 3004.3, at 3004–6 (15th ed. 1989), "such claim, as with any claim, will be subject to technical amendment." We therefore believe that, as long as the creditor seeks to "amend" the proof of claim filed on its behalf within a reasonable time after it is filed, the creditor should be able to attempt to supersede the claim filed on its behalf.

We indicate in the accompanying text at page 723 *infra,* what we believe to be a "reasonable time" for making such a filing under former B.Rule 3004. We would be inclined to interpret the present B.Rule 3004 in the same way.

*Pigott,* 684 F.2d 239, 241 (3d Cir.1982); and *In re Owens,* 67 B.R. 418, 423 (Bankr.E.D. Pa.1986), *aff'd,* 84 B.R. 361 (E.D.Pa.1988). Therefore, we agree with the Debtors, that, in construing the rights of creditors to file superseding claims under former B.Rule 3004, we should borrow the same measurement that we employed in determining whether a debtor is allowed to file a proof of claim on behalf of a creditor after the bar date under former B.Rule 3004, which provided no deadline comparable to the 30-day limit for such a filing now established in B.Rule 3004. That measurement, as we recited in *In re Gurst,* 70 B.R. 467, 469–71 (Bankr.E.D.Pa.), *aff'd,* 80 B.R. 27 (E.D.Pa. 1987), is a "reasonable time," usually limited to six months after the bar date.

In the instant scenario, HUD failed to dispute the Debtors' claim filed on its behalf for almost two years after its filing. It is certainly not reasonable for HUD to delay a period four times the benchmark of reasonability that we imposed upon debtors in similar circumstances in *Gurst, supra.* Therefore, we shall not allow HUD to amend the proof of claim filed on its behalf by the Debtors at this juncture.

The foregoing discussion is, of course, largely academic at this point, because proofs of claim were filed on behalf of both Lomas and HUD only to determine what rights they might have under 11 U.S.C. §§ 550 or 548(c) if we set aside the sheriff's sale of the Premises. We note that, had we granted this relief, we probably would have accorded HUD and/or Lomas the opportunity to file a new proof of claim in light of our disposition in any event. *See Cole, supra,* 81 B.R. 332; and *Corbett, supra,* 80 B.R. at 38. Finally, the proof of claim filed by the Debtors on behalf of HUD, as it expressly relates solely to the amount to which HUD would be entitled under § 550 in the event that the sale was avoided, will probably be withdrawn now that we have ruled that the sale cannot be avoided.

## G. THE DEBTORS ARE ENTITLED TO RECOVER $2,000 FROM LOMAS FOR TILA VIOLATIONS

However, the air of practical irrelevance which surrounds the foregoing aspects of Adversary No. 88–2243 does not pertain to that portion of the Debtors' Complaint stating a claim for damages under the TILA. This portion of the Complaint is pleaded in a single paragraph under a separate heading of the Complaint entitled "Affirmative Claim." Raised thusly, it is clear that the Debtors are asserting therein a claim for damages against Lomas independently from any attack upon Lomas' proof of claim. Thus, although the underlying proof of claim of Lomas will be stricken, this claim remains intact.

The TILA claim stated is substantively the paradigm of that successfully raised by the debtors in *In re Herbert,* 86 B.R. 433, 438–39 (Bankr.E.D.Pa.1988); and *In re Pinder,* 83 B.R. 905, 912–14 (Bankr. E.D.Pa.1988). The instant Debtors, like the respective *Herbert* and *Pinder* debtors, claim that they were never given any TILA disclosure statement at all. Lomas denies this, but having searched its files, has been unable to locate the disclosure statement, as was true of the mortgagees in *Herbert* and *Pinder.* Given the burden upon a creditor to prove compliance with the TILA, we believe that this status of this record, as in *Herbert* and *Pinder,* mandates the entry of a judgment in favor of the Debtors on this claim.

In response, Lomas asserts, principally, what would be, if properly pleaded in its Answer, a meritorious defense based upon the statute of limitations contained in 15 U.S.C. § 1640(e). However, no mention of the statute of limitations was made in Lomas' answer. The difficulty with this defense is that 15 U.S.C. § 1640(e) clearly *is* a statute of limitations ("any action under this section may be brought ... within one year from the date of occurrence of the violation"), like 42 Pa.C.S. § 5524(3), and *not* a "statute of repose," as in the case of 11 U.S.C. § 546(a). *Compare* pages 718–19 *supra.* As we stated in that previous discussion, a defense based upon a statute of limitations must be pleaded in the Answer or it is waived. The limitations de-

fense was not pleaded here.[12] Therefore, it was waived. *Accord, Gurst, supra,* 79 B.R. at 979.

■ Lomas also attempts to articulate a defense based upon 15 U.S.C. § 1612(b), which exempts a governmental entity, such as HUD, from civil liability under the TILA. However, here, Lomas does not have at its disposal even as good of a record as it had in *Pinder, supra,* 83 B.R. at 910–12, where we rejected the argument that Lomas, as an assignee of a mortgage to which HUD was the original party, was exempt from liability. The original mortgagee here was Lomas, not HUD. The only involvement of HUD in this transaction, as we emphasized in sustaining HUD's position as to the Debtors' right to avoid the sheriff's sale in issue, was as an assignee of Lomas' *bid* at the sheriff's sale. *See* page 717 *supra.* Clearly, this involvement is insufficient to allow the successful invocation of 15 U.S.C. § 1612(b) by Lomas to avoid liability here.

■ Finally, we note that, since the mortgage in issue pre-dated April 1, 1981, the Debtors are *each* entitled to a recovery of $1,000. *See Gambale v. Lomas & Nettleton Co.,* 80 B.R. 308, 309, 310 (E.D.Pa. 1987); and *In re Ashhurst,* 80 B.R. 49 (Bankr.E.D.Pa.1987). The Debtors' counsel is also entitled to reasonable attorneys' fees and costs expended in vindicating this claim. 15 U.S.C. § 1640(a)(3).

This award of $2,000, through it will be initially paid to the Trustee, will, in all probability, be ultimately allocated to the Debtors. This award will allay the Debtors' costs in relocating from the Premises. As we previously indicated, we shall assure this effect by continuing the automatic stay in place for 90 days after Lomas remits the $2,000 sum to the Trustee, and we urge the Trustee, if it is appropriate to do so, to expeditiously pay this sum over to the Debtors.

## G. CONCLUSION

Having resolved all of the issues before us, we add, in our accompanying order, only our intention to have any feasible Plan proposed in this long-outstanding case promptly confirmed, if indeed the Debtors intend to pursue this case in light of the instant decision.

## ORDER

AND NOW, this 13th day of April, 1989, upon review of the multifarious Stipulations of Fact and Briefs of the parties relevant to the Motion of the SECRETARY OF HOUSING AND URBAN DEVELOPMENT (hereinafter referred to as "HUD") for relief from the automatic stay in the main bankruptcy case and the above-captioned two adversary proceedings, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of HUD and against the Plaintiff–Debtors, NICHOLAS FRASCATORE a/k/a NICHOLAS J. FRASCATORE and LAURA FRASCATORE, in Adversary No. 88–2185, and the Complaint in this proceeding is therefore DISMISSED.

2. Judgment is entered in favor of the Debtors and against LOMAS MORTGAGE USA, INC. (hereinafter "Lomas") as to all claims asserted by them in Adversary No. 88–2243. Consequently, the Proofs of Claim of Lomas and/or HUD in this case are STRICKEN, and a monetary judgment is entered in favor of the Debtors and against Lomas in the amount of $2,000, plus *reasonable* attorneys' fees and costs incurred in vindicating this claim.

3. HUD's motion for relief from the automatic stay is GRANTED, and HUD is therefore authorized to proceed to obtain

---

12. The only response to the Debtors' averment claiming TILA violations was that same "Denied. This is a conclusion of law." In no sense could we consider this the requisite pleading necessary to raise the statute of limitations, which is defense which must be "set forth affirmatively." *See* B.Rule 7008 and Federal Rule of Civil Procedure 8(c).

We again observe that, despite the efforts of HUD and Lomas to amend the pleadings in this matter, *see* page 714 and page 718 n. 6 *supra,* Lomas never sought to amend its Answer to plead the defense of the statute of limitations.

possession of the Premises situated at 1436 Lycoming Street, Philadelphia, Pennsylvania, in the state courts. However, this aspect of this Order is stayed until 90 days after Lomas makes the payment to the Chapter 13 Trustee pursuant to paragraphs 2 and 5 hereof.

4. Monetary sanctions are imposed against counsel for the Debtors in the amount of Fifty ($50) Dollars and against counsel for Lomas and HUD in the amount of Twenty-five ($25) Dollars in light of the failure of said counsel to comply with the Orders of this Court in briefing this case. These sums shall be paid to the Deputy in Charge of Bankruptcy Operations within ten (10) days hereafter or further sanctions will be imposed.

5. Lomas shall pay the sum of $2,000 awarded against it to the Standing Chapter 13 Trustee, Edward Sparkman, Esquire. The said Trustee shall determine whether this sum may be claimed as part of the Debtors' exemptions, and, if it may be, he shall forward this sum to the Debtors forthwith.

6. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtors' counsel, pursuant to 15 U.S.C. § 1640(a)(3), for time spent on the Truth-in-Lending issue. If this matter is not resolved within fifteen (15) days, the Debtors' counsel shall, within thirty (30) days of this Order, file a Motion requesting such fees, said Motion to be procedurally in conformity with *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr.E.D.Pa. 1987). However, if the Debtors' counsel remits a reasonable request for such fees, which is refused, the said counsel may recover compensation for time spent on the fee application as well as time spent on the pertinent substantive issue.

7. A hearing on Confirmation, the Trustee's Motion to Dismiss, and the Debtors' motion to abate payments remains rescheduled on

TUESDAY, APRIL 18, 1989, at 10:00 A.M. and shall be held in Courtroom NO. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

8. In light of the age of this case, no further continuances of any of the dates set forth herein will be favored.