In re Thomas **BARRETT** and Sharon Barrett, Debtors,

v.

**COMMONWEALTH FEDERAL SAVINGS AND LOAN ASSOCIATION, Robert J. Gunn, John D. Green, Sheriff.**

**Civ. A. No. 89–6659.**

United States District Court, E.D. Pennsylvania.

Feb. 14, 1990.

---

7. *See,* Federal Rules 12(b)(6) and 56.

Eugene Brazil, Fort Washington, Pa., for appellant Robert Gunn.

Ellen McDoweel, Drinker Biddle & Reath, Philadelphia, Pa., for Com.

Jerome Blank, Philadelphia, Pa., for Barrett.

## MEMORANDUM

LUDWIG, District Judge.

This is an appeal from the bankruptcy court order entered August 17, 1989, 104 B.R. 688, setting aside the foreclosure sale of debtor Thomas Barrett's residence as a fraudulent transfer under § 548 of the bankruptcy code. 11 U.S.C. § 548(a)(2). According to appellant Robert J. Gunn, the purchaser of the property, the bankruptcy judge erred in determining that the foreclosure sale brought less than "a reasonably equivalent value" of the property and that the sale rendered debtor insolvent.[1] 11 U.S.C. § 548(a)(2).

In 1975, Barrett purchased premises 3205 Brighton Street, Philadelphia. In 1987, the mortgagee filed a foreclosure action, and on December 5, 1988, upon default judgment, the sheriff sold the property to appellant, the highest bidder, for $66,-000.

On February 23, 1989 Barrett and his wife filed for bankruptcy under chapter 13. 11 U.S.C. § 1321. The mortgagee and appellant moved to lift the automatic stay to enable debtor's eviction. On June 13, 1989 upon hearing, the bankruptcy judge entered an order modifying the stay to permit movants to "perform any duties and to exercise any rights they may have with respect to the property" but noting that "this disposition does not foreclose the possibility of an action to avoid the transfer under 11 U.S.C. § 548(a)(2)." On June 19, 1989, judgment for possession was entered in favor of appellant in state court. On July 6, 1989 debtors filed a complaint in the bankruptcy court to avoid transfer of the property.[2]

Section 548 of the bankruptcy code:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily

\*    \*    \*    \*    \*    \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

Appellant questions whether a foreclosure sale can be a transfer within § 548. "Transfer" is defined in 11 U.S.C. § 101(50) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." While divided, a majority of courts ruling on the issue have recognized a foreclosure sale to be a § 548 "trans-

---

1. Jurisdiction is 28 U.S.C. § 158(a). Review of legal conclusions is plenary. The clearly erroneous standard applies to findings of fact. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.1986).

2. The home was titled solely in the name of Thomas Barrett. The bankruptcy judge dismissed debtors' complaint as to the wife since she had no legal interest in the property. 104 B.R. at 690.

fer." [3] Here, the bankruptcy judge's determination that the foreclosure sale constituted such a transfer does not appear to have been erroneous.

Based on the testimony of three real estate appraisers, the bankruptcy judge concluded that the fair market value of the property as of the sheriff's sale was $95,-000. Op. 7. In arriving at this figure, the bankruptcy judge considered these experts' market analyses and appreciation rates. More weight was given the appraisal of one of the witnesses than the others because his valuation was prepared for a purpose unrelated to the litigation.[4] 104 B.R. at 691. This factual finding was not clearly erroneous.

▉ The bankruptcy judge found that debtors "have, though just barely, met their burden of proving that the Husband received less than a reasonably equivalent value for the property in this transfer." 104 B.R. at 692. The bankruptcy judge noted that "[t]he price received in the transfer ($66,000) is 69.5 percent of the fair market value of the property of $95,000, slightly less than the seventy (70%) percent benchmark which we have consistently accepted," citing *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201, 203–04 (5th Cir.1980). 104 B.R. at 691.

*Durrett* set aside a foreclosure sale in which the price obtained was approximately 57.7 percent of the fair market value of the property. 621 F.2d at 203. It held that under § 67(d) of the then bankruptcy act (the predecessor of § 548), the price paid at the sale was not a "fair equivalent" for the property. *Id.* at 203. *Durrett* observed:

> [w]e have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.

*Id.* at 203.

The "70 percent rule" referred to in *Durrett* has been widely criticized. *See, e.g., In re Adwar*, 55 B.R. 111, 113 (Bankr.E.D. N.Y.1985) ("[A] mere percentage test for measuring value does not take mitigating circumstances into account such as the nature of the market"); *In re Madrid*, 21 B.R. 424, 426 (9th Cir. BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) ("We decline to follow *Durrett*'s 70% fair market value rule for the reason that a regularly conducted sale, open to all bidders and all creditors, is itself a safeguard against the evils of private transfers to relatives and favorites"); *In re Littleton*, 888 F.2d 90, 93 (11th Cir. 1989) ("Had Congress intended that some fixed percentage be used for this determination in all cases, it would have so provided in the statute").

*Durrett*'s *per se* rule would discourage bidding at foreclosure sales if only because of the uncertainty as to hindsight appraisement and the expense, delay, and inconven-

---

**3.** "[T]he debate is whether a foreclosure is in fact a 'transfer' of property or simply the exercise of an inchoate right secured by the mortgagee at the time of giving the mortgage." *Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1015 n. 1 (3d Cir.1988). The Fifth Circuit held that transfer occurs at foreclosure since possession of the property is retained by the debtor subject to the power of the mortgagee to sell and deliver possession of the property upon default and foreclosure proceedings. *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201, 204 (5th Cir.1980). *See also First Federal Savings and Loan Association of Bismark v. Hulm*, 738 F.2d 323 (8th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984) (agreeing with *Durrett* approach). In *In re Madrid*, 725 F.2d 1197 (9th Cir.1984), however, the court determined that transfer for the purposes of § 548 occurred at the time of perfection of the under-

lying deed of trust under state law. 725 F.2d at 1200. Our Circuit in *Butler* specifically declined to resolve the issue, although it noted that the predominant view of bankruptcy courts is that foreclosure is a § 548 transfer. *Butler*, 862 F.2d at 1016, n. 2.

**4.** The three appraisals were $85,000 and $95,500 as of the date of the sale and $93,000 seven months earlier. 104 B.R. at 690. Although the fair market value finding of $95,000 is permitted to stand, it illuminates one of the artificialities of the 70 percent rule. The average of the three appraisals is $91,167, and the successful bid of $66,000 in this case is 72.5 percent of that figure. It may be inappropriate to average the appraisals, but this is just another problem inherent in "the numbers game."

ience caused by bankruptcy proceedings. Arguably, it would have the counter-productive effect of depressing foreclosure sale prices. *See In re Alsop*, 14 B.R. 982, 987 (Bankr. D. Alaska 1981), *aff'd*, 22 B.R. 1017 (D.Alaska). Conceptually, it creates a *de facto* redemption right in bankruptcy that conflicts with the policies underlying state foreclosure statutes. *See id.*

On the other hand, an irrebuttable presumption that the price obtained at foreclosure sale constitutes "reasonably equivalent value" would frustrate the trustee's avoidance power—a consequence not intended by the Code. *See In re Madrid*, 21 B.R. at 428 (Volinn, J., dissenting).

A sounder approach, adopted by the Seventh Circuit in *Matter of Bundles*, 856 F.2d 815 (7 Cir.1988), is case-by-case adjudication. As *Bundles* notes, while fair market value is a starting point, the bankruptcy court

> must focus ultimately on the fair market value as affected by the fact of foreclosure.... [T]he bankruptcy court also must examine the foreclosure transaction in its totality to determine whether the procedures employed were calculated not only to secure for the mortgagee the value of its interest but also to return to the debtor-mortgagor his equity in the property.

856 F.2d at 824.

Relevant factors include whether competitive bidding was encouraged, whether the sale was widely advertised, *id.* at 824, and the arm's length relationship of the parties. There is no reason to believe those factors were lacking here. The bankruptcy court did not mention them but noted that appellant was a bona fide purchaser. The order setting aside the sale will be vacated and the action remanded for consideration in light of all the circumstances surrounding the foreclosure sale of debtor's property.

Appellant argues that the bankruptcy judge erred in finding the foreclosure sale rendered debtor insolvent. The bankruptcy judge found debtor husband to be a credible witness. 104 B.R. at 691. In conclusions of law, the bankruptcy judge placed the burden of proving insolvency on debt-ors and properly applied a balance sheet test to determine whether liabilities exceeded assets as of the date of the transfer. 104 B.R. at 693. The bankruptcy judge also accorded the exemptions available to a debtor under § 522(d). The finding of insolvency was not erroneous.

■ Appellant also asserts that it was error to allow debtors to amend their list of creditors at the adversary hearing without notice to appellant. Bankruptcy Rule 1009 provides that the debtor "shall give notice of the amendment to the trustee and to any entity affected thereby." Even if appellant was not properly notified, the bankruptcy court must determine the effect of the amendment on both parties. *See Matter of Brown*, 56 B.R. 954, 958 (Bankr.E.D.Mich. 1986). When an amendment is sought under Rule 1009, if prejudice to the debtor outweighs that to the third party, the amendment should be allowed. *Id.* at 958. The allowance in this case was within the bankruptcy judge's discretion.

## ORDER

AND NOW, this 12th day of February, 1990 the order of the bankruptcy court of August 17, 1989 setting aside the transfer of the property situated at 3205 Brighton Street, Philadelphia, is vacated. The action is remanded for determination whether a reasonably equivalent value was obtained at the foreclosure sale as defined at § 548(a)(2) of the bankruptcy code in light of all circumstances surrounding the sale.