Thomas J. BARRETT and Sharon B. Barrett, Appellants,

v.

COMMONWEALTH FEDERAL SAVINGS AND LOAN ASSOCIATION, Robert J. Gunn, and John Green, Sheriff, Appellees.

No. 90–1668.

United States Court of Appeals, Third Circuit.

Argued Feb. 6, 1991.

Decided July 12, 1991.

Jerome Brian Blank (argued), Aaron Finestone, Philadelphia, Pa., for appellants, Thomas and Sharon Barrett.

Warren T. Pratt (argued), Joseph F. Riga, Drinker Biddle & Reath, Philadelphia, Pa., for appellee, Commonwealth Federal Sav. and Loan Ass'n.

Gary Klein, Henry J. Sommer (argued), Community Legal Services, Inc., Philadelphia, Pa., for amicus curiae, The Consumer Educ. and Protective Ass'n and Alfred Mattera.

Eugene F. Brazil (argued), Fort Washington, Pa., for appellee, Robert J. Gunn.

Before MANSMANN, SCIRICA and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Senior Circuit Judge.

### I.

This case presents the debtors' (the "Barretts") appeal from the district court's decision not to set aside a foreclosure sale as a fraudulent transfer under 11 U.S.C.

§ 548(a)(2). There have been two appeals from the bankruptcy court to the district court. In both instances the order of the bankruptcy court was vacated. *Barrett v. Commonwealth Federal Savings and Loan,* 111 B.R. 78 (E.D.Pa.1990); *In Re Barrett,* 118 B.R. 255 (E.D.Pa.1990). The district court last considered this case on appeal from the Memorandum and Order of the bankruptcy court dated April 27, 1990 which set aside the foreclosure sale. A brief review of the complex history of this case is provided to clarify the dispute before us.[1]

The appellants here wish to set aside the foreclosure sale of their personal residence on the ground that they received less than the reasonably equivalent value for their house at the foreclosure sale. This case arose when the mortgagee, Commonwealth Federal Savings and Loan Association, instituted foreclosure proceedings after the debtors defaulted. After a default judgment was entered against the debtors, their personal residence was sold at a sheriff's sale to Robert J. Gunn (hereinafter "Gunn") for $66,000. Subsequently, the debtors filed for bankruptcy. The debtors then filed a complaint in the bankruptcy court to avoid transfer of their property.

In the initial proceeding, the bankruptcy court determined that the value of the property was $95,000. The bankruptcy court also found that the amount received at the foreclosure sale "($66,000) is sixty-nine and five tenths (69.5%) percent of the fair market value of the property of $95,000, slightly less than the seventy (70%) percent benchmark which we have consistently accepted." *Barrett,* 104 B.R. 688, 692 (Bkrtcy.E.D.Pa.1989). Relying on the rule articulated in *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203–04 (5th Cir.1980), the bankruptcy court voided the sale because the sale had not yielded the "reasonably equivalent value" of the property.

Gunn, the purchaser of the property at the foreclosure sale, then appealed the bankruptcy court's decision to the district court. The district court held that the bankruptcy court's valuation of the property was not "clearly erroneous,"[2] but vacated the order setting aside the sheriff's sale and remanded "to determine whether under § 548(a)(2) a 'reasonably equivalent value' was obtained at the foreclosure sale in light of the surrounding circumstances." *Barrett,* 111 B.R. 78, 81 (E.D.Pa.1990). The district court instructed the bankruptcy court to consider the price obtained at the foreclosure sale in light of "the totality of the transaction including such factors as the encouragement of competitive bidding," the scope of advertisement and the relationship between the parties, as well as the fair market value of the property in accordance with the Seventh Circuit's opinion in *Bundles v. Baker,* 856 F.2d 815 (7th Cir.1988). *Barrett,* 111 B.R. at 81.

On remand, after considering the additional factors, the bankruptcy court restated its prior holding, and once again, set aside the sheriff's sale. *Barrett,* 113 B.R. 175 (Bkrtcy.E.D.Pa.1990). The bankruptcy court found that, in addition to the inadequate price received, the conditions of the sale, in particular the limited extent to which the sale was advertised, were inadequate. *Id.*

Gunn, the purchaser at the foreclosure sale, again appealed to the district court. The district court reversed and upheld the foreclosure sale because the bankruptcy court had not properly evaluated the fair market value of the property or the conditions of sale in light of the foreclosure. *Barrett,* 118 B.R. 255 (E.D.Pa.1990). The district court concluded that the evidence presented below showed that the foreclosure sale had been conducted in accordance with state law, and that the sale procured the reasonably equivalent value of the property under foreclosure conditions.[3]

**1.** A detailed factual summary of this case appears in *Barrett v. Commonwealth Federal Savings and Loan,* 111 B.R. at 79.

**2.** In view of our holding, we need not determine whether the district court's first decision was correct in holding that the bankruptcy court's valuation was not clearly erroneous.

**3.** The district court noted that:
[t]he bankruptcy court ... stated that the sale did not compare favorably with a typical pri-

The debtors then filed their appeal with this court.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. The district court exercised appellate jurisdiction in this matter pursuant to 28 U.S.C. § 158(a) governing appeals from final judgments of the bankruptcy court. The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. § 157(b), and 28 U.S.C. § 1334(b).

## II.

We must determine whether the district court erred in reversing the order of the bankruptcy court which, after allegedly considering the totality of the circumstances, set aside the foreclosure sale on the grounds that the debtor did not receive reasonably equivalent value for the house. In order to make this decision, we must decide what constitutes reasonably equivalent value under § 548 of the Bankruptcy Code.

Since § 548(a)(2) does not contain a definition of the term "reasonably equivalent value," the courts have been left with the responsibility of defining this term. *In Re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir.1990). The Fifth Circuit's decision in *Durrett v. Washington*, 621 F.2d at 201, and the Seventh Circuit's decision in *Bundles v. Baker*, 856 F.2d at 823–24, represent two different approaches to defining the term "reasonably equivalent value." The Fourth Circuit, in *Morris Communications* has recently outlined the two positions:

> One of the standards known generally as the mathematical formula originated in the setting of a foreclosure sale in *Durrett*, ... and was followed in *Madrid v. Lawyers Title Ins. Co.*, 21 B.R. 424 (9th Cir.1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). Under this standard, a consideration less than 70% of the fair market value will normally not qualify as "reasonably equivalent value." *Durrett, supra*, at 201. The rules to be applied in defining reasonable equivalence, as adopted by the later cases, however, take a less rigid approach and are most accurately summarized in *Bundles v. Baker*, 856 F.2d 815, 823–24 (7th Cir.1988). That decision rejects any fixed mathematical formula for determining reasonable equivalence and opts for the standard that "reasonable equivalence should depend on all the facts of each case," an important element of which is market value. Such a rule "requires case-by-case adjudication," as a starting point [for such review] the fair market value of the property transferred.

914 F.2d at 466–67.

On the instant appeal, the parties agree that the *Bundles* standard should be used to determine reasonably equivalent value because that standard has been widely accepted by the courts. *See, e.g., In Re Lindsay*, 98 B.R. 983, 988–91 (Bkrtcy.S.D. Cal.1989); *General Industries, Inc. v. Shea*, 79 B.R. 124, 129–34 (Bkrtcy.D.Mass. 1987); *In Re Pruitt*, 72 B.R. 436, 444–46 (Bkrtcy.E.D.N.Y.1987); *Ruebeck v. Attleboro Savings Bank*, 55 B.R. 163, 167–68 (Bkrtcy.D.Mass.1985); *In Re Adwar*, 55 B.R. 111, 113–15 (Bkrtcy.E.D.N.Y.1985); *In Re Richardson*, 23 B.R. 434, 448 (Bkrtcy.D. Utah 1982). However, the appellants here contend that the district court misinterpreted the Seventh Circuit's holding in *Bundles* by failing to fully consider the process by which reasonably equivalent value under § 548 must be determined.[4] First, appellants note that the fundamental purpose of

---

vate sale of residential property in Philadelphia. But the critical question is whether the sale compared favorably to a typical *foreclosure* sale in the area—and the uncontroverted evidence received at the supplemental hearing showed that it did so.
118 B.R. at 258.

**4.** Under 11 Bankruptcy Code § 548(a)(2).
The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; (emphasis mine).

§ 548 is to "preserve the assets of the estate." Next, appellants assert that by upholding the foreclosure sale in this case, the district court did not insure that the bankrupts would receive the "reasonably equivalent value" of their property. Under the holding in *Bundles,* there are a number of factors which should be considered when determining value under § 548. These factors include whether the property was appraised fairly, "whether the property was advertised widely, and whether competitive bidding was encouraged." *Bundles,* 856 F.2d at 824. On this appeal, the appellants take issue with two related factors. Appellants contend that the foreclosure sale was not "widely advertised," and because of this they contend that competitive bidding was not encouraged.

■ We must consider whether the appellants' assertions are correct (i.e. whether the district court misinterpreted the *Bundles* holding). In *Bundles,* the Seventh Circuit considered essentially the same issue that is before us, that is, "whether a debtor in bankruptcy may set aside under section 548(a)(2) of the Bankruptcy Code, ..., the sale of his personal residence upon foreclosure of the mortgage." *Id.* at 816. The *Bundles* court reviewed the lower court decisions and concluded that the sale price at a sheriff's sale should not be automatically presumed to provide the debtor with the reasonably equivalent value. *Id.* at 825. The *Bundles* court noted that "in usual circumstances, it would be appropriate to permit a *rebuttable* presumption that the price obtained at the foreclosure sale represents a reasonably equivalent value." [5] *Id.* at 824. In so noting, the court reviewed the legislative history § 548(a)(2),

and concluded "... that Congress did not legislate an irrebutable presumption in the case of mortgage foreclosure sales." [6] *Id.* at 821.

The court then adopted its "totality of the circumstances" test:

[T]he bankruptcy court also must examine the foreclosure transaction in its totality to determine whether the procedures employed were calculated not only to secure for the mortgagee the value of its interest but also to return to the debtor-mortgagor his equity in the property.

*Id.*

■ In the instant case, the district court concluded that the *Bundles* decision held that reasonably equivalent value under § 548(a)(2) should be determined by considering "the fair market value as affected by the fact of foreclosure." *Barrett,* 118 B.R. at 257. As a result, the district court reversed the judgment of the bankruptcy court, and refused to set aside the foreclosure sale. We agree with the district court that the bankruptcy court had, on remand, incorrectly applied the precepts of *Bundles.* The bankruptcy court considered the circumstances surrounding the foreclosure sale, and focused specifically on two factors: 1) whether the sale was widely advertised, and 2) whether competitive bidding was encouraged. *Id.* at 256. We agree that the bankruptcy court erred by comparing the sale and the sale price to "a typical private sale of residential property in Philadelphia" when it should have considered how the sale compared to "a typical foreclosure sale in the area." *Id.* at 258. [7]

---

5. We cannot endorse the general proposition that the sale price at foreclosure will be subject to a rebuttable presumption that it is a "fair" price in usual circumstances. Such a presumption would unfairly burden the debtors under § 548, and would prevent many debtors from obtaining relief.

6. The *Bundles* court set forth the appropriate scope of review for an appellate court in this type of case. The court noted that ...

[i]t is beyond our scope of review to consider the policy implications of permitting the debt-

or to set aside the foreclosure of his home. Any change deemed desirable on policy grounds should be addressed to Congress rather than to this court. Our duty is simply to interpret the language of the statute. Implying an irrebuttable presumption would be inconsistent with that language. Such a reading, in effect, creates an exception to the trustee's avoiding powers under section 548(a)(2)(A)—for property sold at a foreclosure sale.

*Bundles,* 856 F.2d at 823.

7. The district court noted that

## III.

█ Upon review of the totality of the circumstances presented in the case at bar, we agree with the district court's holding that the sheriff's sale should not be set aside. If we consider the evidence in the light most favorable to the appellant, the debtor received 69.5% from the sheriff's sale. If we consider the evidence in the light most favorable to the appellee, the debtor received 77.6% of the value of the property.[8]

The bankruptcy judge's confident determination of market value is not as evident to us as it was to him. For the date of the sheriff's sale, December 5, 1988, the appraiser hired by the debtor valued the property at $95,500 and the bankruptcy court valued the property at $95,000. The appraiser hired by the creditor valued the property at $85,000. *Barrett*, 104 B.R. at 690. In order for the bankruptcy judge to find a violation of what he called the "70 percent rule" he had to find the value to be no less than $94,285.00, and because $66,000 was one half of one percent less than his 70% figure was (it was $420 less than the "required" $66,000 figure) he concluded that the sale had not yielded the reasonably equivalent value of the property.

We recognize that, as Justice Holmes noted, that in the adjudication process there "is the inevitable result of drawing a line where the distinctions are distinctions of degree; and the constant business of the law is to draw such lines." *Dominion Hotel, Inc. v. State of Arizona*, 249 U.S. 265, 268, 39 S.Ct. 273, 274, 63 L.Ed. 597

(1919). However, we do not find that the miniscule distinction between 70% and 69.5% of a possibly inflated value is sufficient to render this sale void.

█ The trial court noted that relief from foreclosure sales should only be granted in extraordinary situations. The factual scenario in this case is not an extraordinary situation, therefore, it is not necessary for us to decide what the applicable law would be in such instances.

### A. Scope of Advertisement–Local vs. State Rule

Appellants concede that the newspaper used for advertisement of the property met the standards under the applicable state rule, Pennsylvania R.Civ.P. 3129.2.[9] However, in support of their argument that the sale in this case was not advertised widely, appellant contends that a local rule of the Philadelphia Common Pleas court, Philadelphia Civ.R. 3192.2 [10], sets the standard for advertising sheriff's sales in Philadelphia. Appellant further contends that the foreclosure sale must be set aside because it was not advertised as extensively as the local rule required.

█ There is a preliminary issue as to whether the Philadelphia Common Pleas court local rule issue should be considered on this appeal since appellants never cited the local rule as a basis for relief when litigating before the bankruptcy court and the district court. As a general rule a party may not raise a new issue on appeal.

... [r]elief from foreclosure sale under § 548 should be reserved for extraordinary situations where state law and sheriff's office procedures have not been followed, where advertising is extremely limited, or where bidding is suspiciously lacking in competitiveness— and the sale price, as a result, is clearly inadequate.
*Id.*

8. In viewing the evidence in the light most favorable to the appellant, one must use the $95,000 appraisal figure. In viewing the evidence in the light most favorable to the appellee, one must use the $85,000 appraisal figure.

9. Pennsylvania Rule of Civil Procedure 3129.2 contains the rules governing sheriff's sales in

Pennsylvania. In pertinent part the rule states the following:

(d) Notice containing the information required by subdivision (b) shall also be given by publication by the sheriff once a week for three successive weeks *in a newspaper of general circulation in the county* and in the legal publication....

10. The Philadelphia local rule states the following:

Writs of execution for the sale of real estate shall be advertised by the Sheriff once a week for three (3) successive weeks in *The Legal Intelligencer* and *in one daily newspaper of general circulation in this county*.... (emphasis added)

*See, Bethlehem Mines Corp. v. United Mine Workers of America*, 494 F.2d 726, 735 (3d Cir.1974) ("Ordinarily an issue not raised by the pleadings or otherwise in the District Court will not be heard on appeal absent extraordinary circumstances."). Though an appellate court may exercise some discretion on these matters, in this case we can not find any extraordinary circumstances that would justify our considering this issue de novo. The local rule was in existence when the matter was first before the bankruptcy court and appellant has on three occasions failed to call this rule to the attention of the judges who presided over the case. We are particularly loathe to decide state law issues which have not been litigated before the trial and bankruptcy courts. Since the advertisement at issue here complied with the state rule in that it appeared in a newspaper of general circulation, the foreclosure sale should not be set aside on the basis that the sale was not advertised in the fashion that appellants claim the Philadelphia Common Pleas court record requires.

### B. Competitive Bidding

We are further persuaded that competitive bidding took place by the testimony regarding the unusually large number of bidders present at the foreclosure sale. *Barrett*, 118 B.R. at 256. Mr. Gunn, the purchaser of the property at the foreclosure sale,

> ... observed that there were 20 bidders present at the December 5, 1988 sale and that it was "standing room only." [citation omitted] He estimated that there were a total of 450 individual bids mostly in $100 increments. [citation omitted]

*Id.*

### IV.

On the basis of the issues actually litigated before the bankruptcy and the district court, we conclude that the district court correctly determined that the foreclosure sale did not violate the applicable rules for sheriff's sales in this case. The judgment of the district court approving the foreclosure sale will be affirmed.