**In re Victoria SHIELDS a/k/a Victoria Stevens Shields, Debtor.**

**Victoria Stevens SHIELDS, Plaintiff,**

v.

**SECRETARY OF VETERANS AFFAIRS, Defendant.**

**Bankruptcy No. 92–11412S.**

**Adv. No. 92–0721S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 8, 1993.

Irwin Trauss, Henry J. Sommer, Community Legal Services, Inc., Philadelphia, PA, for debtor.

Gary McCafferty, Philadelphia, PA, for defendant.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

Presently before this court are (1) a motion of EDWARD DERWINSKI, the Secretary of Veterans Affairs ("the Secretary"), seeking relief from the automatic stay ("the Stay Motion") to evict VICTORIA SHIELDS ("the Debtor") from her home at 1858 East Atlantic Street, Philadelphia, Pennsylvania 19134 ("the Home"); (2) confirmation of the Debtor's Chapter 13 Plan of Reorganization ("the Plan"); and (3) an adversarial proceeding initiated by the

Debtor against the Secretary to set aside a sheriff's sale of the Home to the Secretary, which occurred on September 25, 1989 ("the Proceeding").

Relief must be denied to the Debtor in the Proceeding because (1) the Debtor's attempt to utilize the Pennsylvania Uniform Fraudulent Conveyance Act, 39 P.S. § 351, *et seq.* ("the UFCA"), as a basis for overturning a sheriff's sale is unsupported by applicable state law, as we noted in *In re Frascatore*, 98 B.R. 710, 719–20 (Bankr. E.D.Pa.1989); (2) in any event, the two-year statute of limitations applicable to actions instituted under the Pennsylvania UFCA, as we found in *In re Numedco, Inc.*, 1991 WL 204908, slip op. at *2 (Bankr. E.D.Pa. October 7, 1991); and *Frascatore, supra*, 98 B.R. at 718, has run; and (3) even if this action could be maintained under the UFCA, in the same manner as a proceeding attacking a sheriff's sale on the basis of 11 U.S.C. § 548(a)(2), and had been timely filed, the Debtor has not satisfied even the very liberal burdens of proof for such relief under § 548(a)(2) which were set down by us in *In re Cole*, 81 B.R. 326, 330–31 (Bankr.E.D.Pa.1988); and *Frascatore, supra*, 98 B.R. at 716–17.

Therefore, as in *Frascatore*, relief from the stay must be granted to the Secretary. *See id.* at 720–21. Confirmation of the Plan must be denied. We will provide the Debtor but one further brief opportunity to present a confirmable plan or to request conversion of this case to Chapter 7, or we will proceed to dismiss the underlying case.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed the underlying Chapter 13 bankruptcy case on March 9, 1992. The Secretary filed the Stay Motion on June 11, 1992. It was initially listed for a hearing on July 21, 1992. On that latter date, the parties agreed to the continuance of the hearing until September 1, 1992, the first scheduled date of the confirmation hearing in this case. These hearings were to coincide with the trial of the Proceeding, which was to be filed imminently by the Debtor.

The Proceeding was in fact filed on July 22, 1992. On July 23, 1992, we entered an Order directing that the hearing on the Stay Motion and the trial of the Proceeding could not be continued beyond September 1, 1992.

On September 1, 1992, the parties appeared before us and recited a procedure for resolving the Stay Motion, the issue of confirmation, and the Proceeding, memorialized by our Order of September 2, 1992. A Stipulation of Facts and the Debtor's Opening Brief were to be filed by September 28, 1992; the Secretary's responsive Brief was due on October 19, 1992; and the Debtor's Reply Brief was to be filed on October 26, 1992.

On September 28, 1992, the parties presented a Stipulation postponing the established dates for about 30 days due to a knee injury requiring surgery to the Debtor's counsel. Nevertheless, without explanation, the Stipulation of Facts and the Debtor's Brief did not appear on October 28, 1992, as scheduled. Ultimately, we learned that the rehabilitation of the injured knee of the Debtor's counsel had been slower than expected, and the Debtor's counsel requested a further extension of about sixty (60) days in the Briefing. The Secretary's counsel only agreed to an extension of about forty (40) days. Ultimately, with the agreement of counsel, we entered an Order of November 10, 1992, extending the filing of the Stipulation of Facts and the Debtor's Brief until December 7, 1992; the Secretary's Brief until December 28, 1992; and the Debtor's Reply Brief until January 4, 1993.

The Stipulation of Facts and the parties' respective initial Briefs appeared in accordance with the Order of November 10, 1992. Again without explanation, no Debtor's Reply Brief has appeared. Given the excessive delay already effected in this case, and the simplicity of the issues presented, we have neither the inclination nor cause to delay further in deciding these matters without it.

The entire record of these matters is embodied within the 10–paragraph Stipulation of Facts, the pertinent last eight paragraphs of which provide as follows:

3. On or about September 25, 1989, the [Secretary] purchased the [D]ebtor's

[H]ome at a sheriff sale for a bid of $10,000.00.

4. At the time of the sale, the [D]ebtor's [H]ome had a fair market value of approximately $20,000.00.

5. As a result of the sale, the [D]ebtor was rendered insolvent within the meaning of 39 P.S. § 352.

6. The [D]ebtor would testify that at the time of the sale of the [D]ebtor's [H]ome to the [Secretary] the [D]ebtor had creditors with matured claims against her whose claims have to the date of the hearings in the captioned case not been paid.

7. The transfer of the [D]ebtor's interest in her [H]ome was involuntary within the meaning of 11 U.S.C. §§ 522(h) and (g).

8. The [D]ebtor's chapter 13 statement filed by the [D]ebtor in the above captioned bankruptcy shall be an exhibit which shall be admitted into evidence and shall form part of the record in the above captioned matter.

9. The [Debtor's] complaint in the above captioned matter and the [Secretary's] answer thereto shall be part of the record in the above captioned matter and any admissions contained in those pleadings shall be admitted into evidence in the instant proceeding.

10. The motion of the Secretary ... and the [D]ebtor's answer thereto shall be part of the record in the instant proceeding and any admissions contained in those pleadings shall be part of the evidence upon which the court can render its decision in the instant case.

The pleadings incorporated thereby add little or nothing to the foregoing text of the Stipulation.

## C. DISCUSSION

1. THE DEBTOR PROVIDES NO BASIS FOR OVERCOMING OUR DOUBT EXPRESSED IN *FRASCATORE* THAT A SHERIFF'S SALE MAY EVER BE INVALIDATED AS A FRAUDULENT CONVEYANCE UNDER THE PENNSYLVANIA UFCA.

 The instant Debtor's counsel is the same attorney who tried the *Frascatore*

case, and he is therefore undoubtedly aware that the *Frascatore* Opinion addresses almost all of the issues presented in the instant Proceeding. In that Opinion, we rather easily concluded that it was permissible, as does the Debtor here, to utilize 11 U.S.C. § 544(b) to invoke the Pennsylvania UFCA as a basis for a debtor's challenge of a conveyance of the debtor's property as fraudulent. 98 B.R. at 716. However, while observing that a sheriff's sale could be set aside, under principles of pertinent Pennsylvania law apart from the UFCA, for gross inadequacy of price or actual fraud in the sale process, we noted that, as to the UFCA,

> we have located *no* case in any jurisdiction, let alone in Pennsylvania, where a regularly conducted, non-collusive sheriff's sale has been set aside on the basis of 39 P.S. § 354, or its equivalent. We would, therefore, be hesitant to act on this basis.

*Id.* at 720.

Despite his painful awareness of *Frascatore*, the Debtor's counsel not only failed to cite or distinguish *Frascatore*, but also presented no argument to rebut its conclusions. This attempt to ignore the reasoning of *Frascatore* reinforces our doubts that the UFCA can be used in the fashion which the Debtor has now proposed.

The Debtor did attempt to invoke one authority, the decision in *Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 215 (3rd Cir.1990), in support of the principle that a "conveyance by foreclosure without fair consideration ... is a fraudulent conveyance within the meaning of 39 P.S. § 354" of the UFCA. Brief in Support of Debtor's Complaint to Avoid the Conveyance of Her Home to the VA and to Obtain Re-conveyance of Her Property ("Debtor's Brief"), at 4. It is true that, in *Voest–Alpine*, a foreclosure sale by a secured creditor which occurred in the midst of a transaction whereby a debtor transferred all of its assets to a new corporate entity as part of a scheme involving actual fraud upon the creditors of the

debtor's predecessor was set aside. *Id.* at 214–15. However, the sheriff's sale at issue in *Voest–Alpine* was not, as is here alleged, the sole manifestation of the alleged fraudulent conveyance in issue. Nor was a mere constructive fraudulent conveyance in issue, as here, since the court found that the debtor in *Voest–Alpine* was chargeable with actual fraud. Rather, the *Voest–Alpine* sheriff's sale was itself either collusive or at best an element utilized by the debtor, in concert with its secured creditor who foreclosed at the sale, as an aspect of a fraudulent scheme to cheat another large creditor of the debtor.

The foreclosure sale in *Voest–Alpine* was therefore not, as the Debtor's Brief suggests and is argued by the Debtor to be the case here, in and of itself a fraudulent conveyance. Therefore, we conclude that *Voest–Alpine* provides very little support for the Debtor's cause. In no sense does it suggest that, under the Pennsylvania UFCA, a totally involuntary, unstaged, and non-collusive sheriff's sale may be deemed to be a fraudulent conveyance under the UFCA. We are now therefore prepared to predict that the Pennsylvania Supreme Court, if squarely presented with the issue, would hold that the UFCA does *not* support the Debtor's cause of action.

We disagree with the Secretary's argument that setting aside a sheriff's sale which occurred more than one year prior to a bankruptcy filing is foreclosed by *Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015 (3rd Cir.1988). *Butler* addresses only the issue of when invocation of 11 U.S.C. § 548(a)(2) is appropriate to avoid a sheriff's sale. It does not address the issue of when an action based upon the UFCA, a statutory scheme entirely separate from § 548, may be brought. *See Frascatore, supra,* 98 B.R. at 716.

However, our prediction that the Pennsylvania UFCA would not be interpreted to allow it to serve as a basis to overturn a procedurally-proper Pennsylvania sheriff's sale is in and of itself dispositive of the instant Proceeding in favor of the Secretary.

2. ASSUMING *ARGUENDO* THAT STATE LAW AUTHORIZED THE RELIEF SOUGHT, THE DEBTOR'S CAUSE OF ACTION IS BARRED BY THE PROPERLY–PLEADED, APPLICABLE TWO–YEAR STATUTE OF LIMITATIONS.

■ The *Frascatore* defendant failed to plead the statute of limitations as an affirmative defense in its Answer to the debtor's complaint. *See* 98 B.R. at 718. Therefore, we held in *Frascatore* that, although "it appears that a UFCA action is subject to a two-year Pennsylvania statute of limitations," the *Frascatore* defendant had waived this defense. *Id.*

The Secretary *did* plead the statute of limitations as an affirmative defense in his Answer to the Complaint in this Proceeding, although he did not argue this issue in his Brief. Moreover, subsequent to the *Frascatore* Opinion, we had occasion to consider the issue of the limitations period to which Pennsylvania UFCA actions are subject at length in *Numedco, supra.*

First, we held, in *Numedco*, slip op. at *1,

> that the combined effect of (1) 11 U.S.C. § 108(a)(2); and (2) the fact that [the plaintiff] filed suit within two years from the entry of the order for relief in this case causes the statute of limitations to cease running as of the date of the entry of the order for relief, ... *See Wood & Locker, Inc. v. Doran & Associates,* 708 F.Supp. 684, 686–87 (W.D.Pa.1989); *In re T.C.I., Ltd.,* 21 B.R. 876, 878–79 (Bankr. N.D.Ill.1982); and 2 COLLIER ON BANKRUPTCY, ¶ 108.02, at 108–3 to 108–7 (15th ed. 1991)....

However, we also held that, as to a proceeding based upon the Pennsylvania UFCA, that the cause of action must have accrued within two years of the entry of the order for relief to avoid dismissal due to the statute of limitations arising from 42 Pa.C.S. § 5524(7), added to the Pennsylvania Judicial Code in 1982. We reasoned, *id.* at *2, that

> [i]f such actions are not within the scope of 42 Pa.C.S. § 5524(3), they are all surely within the scope of 42 Pa.C.S.

§ 5524(7). *See Gruber [v. Price Water-house* ], ... 911 F.2d [960,] at 968–69 [ (3rd Cir.1990) ]; *A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 333–34 (3rd Cir. 1986); *Zimmer v. Gruntal & Co.*, 732 F.Supp. 1330, 1335–36 (W.D.Pa.1989); *Silverman v. VFF Co.*, 1989 WL 147582, 1989 U.S.Dist. LEXIS 14554, slip op. at *4 (E.D.Pa. Dec. 5, 1989): *Bhatla v. Resort Development Corp.*, 720 F.Supp. 501, 512–13 (W.D.Pa.1989); *Kursman v. Wright/Egan & Associates*, 1988 WL 122127, 1988 U.S.Dist. LEXIS 12716, slip op. at *31 (E.D.Pa. Nov. 23, 1988); *Union Corp. v. Brown*, 1988 WL 31080, 1988 U.S.Dist. LEXIS 2542, slip op. at *1, *2 (E.D.Pa. March 29, 1988); *Schwartz [v. Pierucci,*], ..., 60 B.R. [397,] at 401–02 [ (E.D.Pa.1986) ]; *Fickinger v. C.I. Planning Corp.*, 556 F.Supp. 434, 439 (E.D.Pa.1982); *In re Truco, Inc.*, 110 B.R. 150, 153–54 (Bankr.M.D.Pa.1989); *In re Glenn*, 108 B.R. 70, 73 (Bankr. W.D.Pa.1989); *Frascatore, supra*, 98 B.R. at 718; *In re Penn Packing Co.*, 42 B.R. 502, 505 (Bankr.E.D.Pa.1984); and *Amodeo v. Ryan Homes, Inc.*, [407 Pa.Super. 448, 463, 595 A.2d 1232, 1240 (1991) ]. *But cf. Harper v. Superior Tool & Die Co.*, 1987 WL 18414, 1987 U.S.Dist. LEXIS 9217, slip op. at *6 (E.D.Pa. Oct. 7, 1987); and *Penn Packing, supra*, 42 B.R. at 506. The decisions in *Harper, supra,* and *Penn Packing, supra,* 42 B.R. at 506, which appear to the contrary of the other citations, are possibly explained by the fact that the causes of action in issue in each of those cases accrued prior to 1982, when the Pennsylvania legislature added 42 Pa. C.S. § 5524(7) and made clear that all actions seeking recovery of damages "for injury to person or property, ... including deceit or fraud" were subject to a two-year limitations period. *See A.J. Cunningham, supra*, 792 F.2d at 334.

The sheriff's sale of the Debtor's Home, which marked the accrual of the instant cause of action, occurred on September 25, 1989. The limitation period ceased running on the date of the entry of the order for relief in this case, *i.e.*, March 9, 1992. Unfortunately for the Debtor, the applicable two-year limitation period had therefore already run as of the date of the filing of the Debtor's bankruptcy case. The statute of limitations is therefore a complete defense to this action.

The Debtor cites several dated authorities, Debtor's Brief, at 7–8 & n. 6, most notably *United States v. Gleneagles Investment Co.*, 565 F.Supp. 556, 583 (M.D.Pa.1983), *aff'd in part & remanded in part sub nom. United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3rd Cir.1986), *cert. denied sub nom. McClellan Realty Corp. v. United States*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987), in support of her contention that her cause of action is subject to a six-year statute of limitations. However, we note that all of the cases cited by the Debtor pre-dated the 1982 statutory amendment adding 42 P.S. § 5524(7). For example, the transactions at issue in the *Gleneagles* case took place in 1972 and 1973. 565 F.Supp. at 564–72. Hence, as we observed in *Numedco, supra,* was also true in *Harper, supra;* and *Penn Packing, supra,* where a six-year statute of limitations was applied, the cause of action in *Gleneagles* accrued prior to the critical amendment adding 42 Pa.C.S. § 5524(7) in 1982.

Hence, by the apparently-unanimous and great weight of authority, we conclude that this proceeding is foreclosed by the applicable statute of limitations. For that reason, also, the Debtor's cause of action cannot succeed.

3. ASSUMING *ARGUENDO* THAT STATE LAW AUTHORIZED THE RELIEF SOUGHT AND THAT THE DEBTOR'S CAUSE OF ACTION WAS NOT BARRED BY LIMITATIONS, THE DEBTOR HAS FAILED TO PRESENT SUFFICIENT FACTS IN THIS RECORD TO JUSTIFY THE RELIEF SOUGHT.

The Stipulation of facts presents a very sparse record upon which to decide the Proceeding on its merits, even if we were

able to overcome our previous conclusions that the UFCA does not allow the relief sought and that the Debtor's claims are barred by the applicable statute of limitations. The Stipulation does provide that the Debtor may invoke the trustee's powers under 11 U.S.C. § 544(b) through 11 U.S.C. §§ 522(g)(1), (h). *See Frascatore, supra,* 98 B.R. at 716; and *In re Butler,* 75 B.R. 528, 530 (Bankr.E.D.Pa.1987), *rev'd on other grounds sub nom. Butler v. Lomas & Nettleton Co., supra.* It also provides that the Debtor was rendered insolvent by the sheriff's sale in issue for purposes of 39 P.S. § 352, which is a necessary element to establish a "constructive" fraudulent conveyance. *See In re Barrett,* 104 B.R. 688, 692–94 (Bankr.E.D.Pa.1989), *vacated on other grounds sub nom. Barrett v. Commonwealth Federal Savings & Loan Ass'n,* 111 B.R. 78 (E.D.Pa.), *reinstated,* 113 B.R. 175 (Bankr.E.D.Pa.), *rev'd on other grounds,* 118 B.R. 255 (E.D.Pa. 1990), *aff'd,* 939 F.2d 20 (3rd Cir.1991); and *In re Pinto,* 89 B.R. 486, 500–02 (Bankr. E.D.Pa.1988).

■ However, the only other pertinent facts recited in the Stipulation are that the Home was valued at $20,000 at the time of the sale and that the Secretary himself purchased the Home at the sale for a bid of $10,000. As we made clear in *Cole, supra,* 81 B.R. at 330, comparing the bid price to market value, without considering the judgment and liens of the creditor-purchaser affected by the sale, is unacceptable in an analysis of whether the judgment debtor received adequate consideration for property sold at a sheriff's sale, under both state and federal law. We also note that, in *Barrett v. Commonwealth Federal Savings & Loan Ass'n,* 939 F.2d 20, 23–24 (3rd Cir.1991), the Court of Appeals questioned whether a mere comparison of the bid with the value of the property sold was sufficient to support the avoidance of a sheriff's sale on the ground that it constituted a constructive fraudulent conveyance as to a debtor's other creditors, even in the relatively simple situation where the bidder was a third party and not the judgment creditor.

The Debtor has not provided us with a record containing insufficient data to measure the applicability of the two alternative, acceptable methods of calculation of whether a sheriff's sale in which the judgment creditor is the successful bidder provided adequate consideration to the Debtor's estate, *i.e.,* (1) comparing the liens cleared by the sale to the value of the property sold; or (2) comparing the amount of the bid at the sale to the debtors' equity lost in the sale, and ascertaining whether either calculation yielded a ratio of less than seventy (70%) percent. *See Frascatore, supra,* 98 B.R. at 717; and *Cole, supra,* 81 B.R. at 330–31. *But see Barrett, supra,* 939 F.2d at 25 (questioning the use of the seventy (70%) percent benchmark as a measure of adequate consideration, even in a situation where there was a third-party bidder).

Without knowledge of the amount of the Secretary's underlying judgment of any of the other liens cleared off by the instant sheriff's sale, we cannot employ the first alternative *Cole* test. Nor, without this information, can we determine the "equity lost" by the Debtor in the sale process, and utilize the second alternative *Cole* test. While there may be some doubt as to which party bears the burden of proving insolvency (or solvency) once a transaction in which inadequate consideration is received is proven, there is no question that the party seeking to set aside a transfer bears the burden of proving the issue of inadequate consideration, under state or federal fraudulent conveyance law. *See In re Pinto Trucking Service, Inc.,* 93 B.R. 379, 388 (Bankr.E.D.Pa.1988).

Since the record is inadequate to prove this issue one way or the other, the party with the burden of proof, *i.e.,* the Debtor, cannot prevail.[1] Thus, for this third, inde-

---

1. Since the Secretary is involved in this transaction, the Debtor's underlying mortgage loan was most probably insured by the Veterans Administration ("the VA"). This fact suggests that the Debtor made a low downpayment and that the foreclosure judgment, if it occurred during any but the last few years of the mortgage, was quite large. *Compare Frascatore,* 98 B.R. at 715, 717.

pendent reason, the Debtor's cause of action must fail.

### 4. IN LIGHT OF THE DISMISSAL OF THE PROCEEDING, THE SECRETARY IS ENTITLED TO PREVAIL ON THE STAY MOTIONS, AND CONFIRMATION OF THE DEBTOR'S INSTANT PLAN MUST BE DENIED.

We therefore conclude, without hesitancy, that the Debtor cannot succeed in the Proceeding and that it must be dismissed. Consequently, as in *Frascatore*, 98 B.R. at 720–21, we can readily conclude that the Secretary is entitled to relief from the automatic stay to evict the Debtor from the Home. The Debtor cannot possibly cure the mortgage delinquency to the Secretary because an unavoidable sheriff's sale terminated that right. *See Butler, supra*, 862 F.2d at 1019; and *In re Brown*, 75 B.R. 1009, 1010–12 (Bankr.E.D.Pa.1987).

The Plan contemplates that the Debtor will recover the Home via the Proceeding, and liquidate the VA's lien which arises under 11 U.S.C. § 548(c) upon the setting aside of the sale, with payments to be made to. the VA outside of the .Plan.[2] We are obliged to deny confirmation of the Plan as infeasible, under 11 U.S.C. § 1325(a)(6),

---

On the other hand, foreclosure of a VA-guaranteed mortgage may not eliminate the mortgagor's deficiency liability, and this factor could affect the calculations under the *Cole* tests. *See Cole, supra*, 81 B.R. at 331 n. 2. However, there is no indication in the record that the Debtor's underlying loan *was* VA-guaranteed, and we cannot speculate any further on this issue.

2. As we noted in *In re Taras*, 136 B.R. 941, 952 (Bankr.E.D.Pa.1992), even if the Debtor had succeeded in setting aside the foreclosure sale of the Home as a fraudulent conveyance, it is not clear that she could have proposed a plan which would delay payment of the accelerated mortgage balance over the life of a five-year plan of reorganization in light of the decision in *First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 65–67 (3rd Cir.1991).

However, *Perry* appears to hold only that, if 11 U.S.C. § 1322(b)(2) is applicable to a proposed cure of a mortgage obligation, a default in that obligation cannot be cured by means of a Chapter 13 plan. It expressly does not consider what sort of security interests in addition to a security interest in a debtor's principal residence would eliminate applicability of § 1322(b)(2).

since it is dependent on the contingency of our setting aside the sale, and we are unwilling to do this.

The Debtor may wish to dismiss her case or convert it to a Chapter 7 case in light of the instant decision. We will allow her a brief time, *i.e.*, until January 19, 1993, to either file and serve a new Chapter 13 plan consistent with this Opinion or convert her case to a Chapter 7 case. However, if she fails to act by that date, we will proceed to dismiss her bankruptcy case.

### D. CONCLUSION

An Order consistent with the determinations rendered in this Opinion will be entered.

### ORDER .

AND NOW, this 8th day of January, 1993, upon consideration of the contents of the Stipulation which the parties agreed would constitute the record in reference to the above proceeding ("the Proceeding"); and the Motion of Edward Derwinski ("the Secretary") for relief from the automatic stay ("the Stay Motion") and whether the Debtor's Plan of Reorganization ("the Plan") can be confirmed in the Debtor's

---

*See Perry,* 945 F.2d at 62 n. 1; and *Taras, supra,* 136 B.R. at 951. Also, the *Perry* debtor did not invoke 11 U.S.C. § 1322(b)(3), which may well allow a debtor who has set aside a sheriff's sale to liquidate the § 548(c) lien balance in a Chapter 13 plan. *See Taras, supra,* 136 B.R. at 951 & n. 5.

Finally, a § 548(c) lien may not be the equivalent of a pre-sale, accelerated, matured mortgage loan obligation. As the Debtor points out, 11 U.S.C. § 522(i)(2) provides that a transfer avoided pursuant to 11 U.S.C. §§ 544, 548 may be preserved for the benefit of her estate. It would benefit the Debtor's estate to allow the Debtor to cure the Secretary's § 548(c) lien in a plan of reorganization. Therefore, different treatment—such as liquidation over the life of a Chapter 13 plan—may be warranted for liquidation of such a "new" lien, arising only upon the setting aside of the sale.

Of course, these concerns are irrelevant here, because the Debtor is never able to clear the initial hurdle of setting aside the sheriff's sale of the Home.

main case, and upon consideration of the Briefs submitted by the parties relevant thereto, it is hereby ORDERED AND DECREED as follows:

1. As to the Proceeding, judgment is entered in favor of the Secretary and against the Plaintiff–Debtor, VICTORIA STEVENS SHIELDS ("the Debtor"). The Proceeding is therefore DISMISSED.

2. The Stay Motion is GRANTED. The Secretary is therefore authorized to proceed with any appropriate state court action to evict the Debtor from her home at 1858 East Atlantic Street, Philadelphia, Pennsylvania 19134.

3. Confirmation of the Plan is DENIED.

4. The Debtor shall file and serve upon all creditors, the Trustee, the United States Trustee, and the court in chambers any Amended Chapter 13 Plan not inconsistent with the accompanying Opinion, or an application to convert this case to a Chapter 7 case, on or before January 19, 1993, or this case will be dismissed.

5. In the event that an Amended Chapter 13 Plan is duly filed and served, the hearing to consider confirmation of that Plan is scheduled on

TUESDAY, FEBRUARY 16, 1993, AT 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

6. Further continuances will not be favored, as this case is nearly one year old.